## ALEXANDER v. STATE.
### (No. 682.)

CRIMINAL LAW—REVIEW BY TRIAL COURT—WRIT OF ERROR CORAM NOBIS.

1. A writ of error *coram nobis* will not issue for any cause for which the statute provides a remedy, and its functions are strictly limited to an error of fact for which the statute provides no other remedy, and which facts do not appear of record or were unknown to the court when judgment was pronounced, and which, if known, would have prevented the judgment, and which were unknown and could not by the exercise of reasonable diligence have been known to the party in time to have been otherwise presented to the court, unless he was prevented from so presenting them by duress, fear, or other sufficient cause.

2. To justify a writ of error *coram nobis,* it must be shown to a reasonable certainty, by affidavit or sworn petition, that such an error of fact as may be reviewed on such a writ existed and resulted in an erroneous judgment.

3. The allegations in a petition for a writ of error *coram nobis* to review a judgment entered on a plea of guilty, *held* not to show that such plea was entered involuntarily under a fear of mob violence based upon reasonable grounds for apprehending danger, and therefore that the petition was properly dismissed.

4. The court properly refused to allow the petition for a writ of error *coram nobis* to be amended where the amendment offered was verified only by the attorney for the petitioner on information and belief.

5. It is within the discretion of the court to allow a petition for a writ of error *coram nobis* to be amended, and unless the discretion appears to have been abused the refusal to permit an offered amendment will not be ground for reversal.

[Decided April 23, 1912.]                    (123 Pac. 68.)

ERROR to the District Court, Big Horn County; HON. CARROLL H. PARMELEE, JUDGE.

From a judgment dismissing the petition for a writ of error *coram nobis* presented to the District Court by Milton A. Alexander, the petitioner brought error. The material facts are stated in the opinion.

*W. E. Mullen,* for plaintiff in error, *(Samuel A. King,* of counsel.)

The motion to quash the writ and dismiss the petition on the alleged ground that the petition is insufficient in law to warrant the relief prayed for, was regarded as in legal effect a demurrer. Like a demurrer it admitted the facts and challenged the sufficiency of the petition to show that there were errors in the record and prior proceedings of the court. It presented questions of law only to be determined by the court. (2 Tidd's Practice, 1173.) The grounds stated in the motion to quash did not go to the mode of procedure, and did not question the correctness of the remedy to be enforced. In legal effect it admitted that the procedure was proper, and that the issues before the court on the petition and motion were issues of law solely, and therefore the affidavits filed by the respondent had no proper place in the proceeding. By the petition for the writ of error *coram nobis* a common law remedy was sought—a remedy recognized by the authorities and which has in no particular been modified by statutory enactment in this state. (Hollibaugh v. Hehn, 13 Wyo. 280; Sanders v. State, 85 Ind. 318; State v. Calhoun, (Kan.) 32 Pac. 38.) The court therefore erred in overruling the petitioner's motion to strike out the affidavits filed with the motion to quash.

If the facts set forth in the petition are true, then the plea of guilty previously entered in the case should be set aside. The question of the ability of the prosecuting officers to secure in the future testimony deemed by them important does not answer the proposition that the conditions surrounding the plaintiff in error when he entered his plea of

guilty were sufficient in law to warrant setting aside the plea and the judgment. The real question before the court was: Was the plea of guilty obtained by means of force, fear, duress and intimidation, and were the facts and circumstances surrounding the plaintiff in error at the time the plea was entered such as to deprive him of his constitutional rights? Every defendant in a criminal case is entitled to his constitutional rights, particularly those which guarantee· him a fair and impartial trial before a fair and impartial jury, and the right to be confronted by the witnesses against him. If those rights were violated, then he is entitled to be restored thereto, and whether the state can or cannot thereafter procure its witnesses is an immaterial question.

It was error to sustain the motion to quash and dismiss the petition of plaintiff in error. It is submitted that the petition shows all the necessary facts to entitle him to the relief demanded. It was not necessary as a condition precedent to this relief that the petitioner should have applied for a change of venue. The statute providing for a change of venue in criminal cases did not repeal the common law remedy here sought. Likewise, it was not necessary that the petitioner should have made an application for a continuance. (Sanders v. State and State v. Calhoun, supra; Const. Art. I, sec. 10.) As to the contention that the petition fails to show a valid defense which was prevented by duress, fear or excusable mistake, it is sufficient to say that the defendant is presumed to be innocent, and presumptions of law need not be stated in his pleading. The petitioner had on two occasions pleaded not guilty to the offense charged. It may be true that under some circumstances a person may be required in a proper pleading to set forth a valid defense, but that is only where the person has been tried, convicted and sentenced, and he is then endeavoring to use the writ to make it answer the purpose of a new trial. Such authorities as there may be upholding that proposition will not be found in states where the common law rules are enforced. The objection, however, was cured by offering to amend the petition.

The objection to the petition that it does not appear that the facts complained of were unknown to the court or the judge thereof when sentence and judgment were pronounced and entered is untenable. Such an allegation is sometimes required where a trial has been had and a record made. In this case the plea of not guilty was withdrawn and a plea of guilty entered, by reason of violence, intimidation, fear and duress. Whether the court or the judge knew or did not know of these conditions was wholly immaterial, because if the conditions had been known by the court or judge and the plea had then been accepted and judgment entered, the defendant would not have been relieved from the duress, fear and intimidation, but the court or judge would then have become a party to the wrong doing. This was the situation in the case of Sanders v. State, supra. The allegations of the pleadings are required by the statute to be liberally construed with a view to substantial justice between the parties. (Comp. Stat., sec. 4416.) This statute has been frequently recognized by this court and approved. Again, by section 4438 the court is required in every such action to disregard any error or defect in the pleadings or proceedings not affecting the substantial rights of the adverse party.

There is nothing in the objection that the petitioner has lost his right by reason of delay, without showing a reasonable excuse therefor. He was not required to institute this proceeding within ten days after the entering of the judgment, the period for filing the motion for new trial. The remedy here invoked is not a statutory remedy, nor is it invoked by any statutory regulation. The point here contended for is in this particular that the petitioner was denied the right of trial by jury, and that a plea of guilty was extorted from him by fear and duress, hence he could not be required to apply for a new trial. A writ of error *coram nobis* cannot be resorted to for the purpose of correcting errors of law. Its office is to correct an error of fact not appearing on the face of the record, unknown to the court or the party affected, and which, if known in season, would

have prevented the rendition of the judgment. (Asbell v. State, 62 Kan. 209, 61 Pac. 690; Collins v. State, 66 Kan. 201, 71 Pac. 251.) The objection that the proceedings should have been commenced within one year, and that the writ should be denied without an allegation excusing the delay is also untenable. It is clear that the provision of the statute limiting the time for a proceeding to vacate, modify or annul a judgment by a petition in error does not apply. None of the statutory provisions relating to vacating or modifying a judgment have any application to this proceeding. The objection that the petitioner was guilty of laches in instituting his proceeding, and that such laches will prevent the state from now properly prosecuting the case in the event that the writ should be sustained and a new trial granted cannot be considered seriously. This objection is in the nature of the plea of the statute of limitations, which, in a case of this kind cannot be successfully urged, at least where writs of error *coram nobis* are controlled by the common law. (State v. Calhoun, 32 Pac. 38; Powell v. Gott, 13 Mo. 458; Latshaw v. McNees, 50 Mo. 361; Dobbs v. State, (Kan.) 61 Pac. 408.)

While the granting of leave to amend a pleading is largely discretionary, if the court's discretion is arbitrarily exercised to the prejudice of the party, the appellate court will generally afford relief. The facts pleaded in the petition were not denied, but certain objections were made relating to its sufficiency. If an amendment tendered would cure the alleged defects, there would seem to be no reason why it should not be granted.

The writ of error *coram nobis* is a proper remedy in criminal cases, and being so it should be issued by the court rendering the original judgment. (Sanders v. State, 85 Ind. 318; State v. Calhoun, 50 Kan. 523; Alder v. State, 35, Ark. 517; Ex parte Toney, 11 Mo. 420; Ex parte Gray, 77 Mo. 160; U. S. v. Plummer, 3 Clifford, 1; Witworth v. U. S. 114 Fed. 302; Fugate v. State, 85 Miss. 94, 107 Am. St. Rep. 268; State v. Asbell, 62 Kan. 209, 61 Pac. 690;

Dobbs v. State, 62 Kan. 108, 61 Pac. 408; Calhoun v. State, 66 Kan. 207; 71 Pac. 251; 97 Am. St. Rep. 361; Whärt. Cr. Pl. & Pr., sec. 97-b; 2 Tidd's Practice, sec. 1136; Hollibaugh v. Hehn, 13 Wyo. 350; Wynne v. Governor, 2 Yerg. 149, 24 Am. Dec. 448; 5 Ency. Pl. & Pr. 33.) It is believed that the correct practice was adopted in this case by filing a petition. At any rate, the procedure adopted has in no manner been questioned by the respondent. In some states the practice is regulated by statute, but the matter is always brought to the court's attention by affidavits or by petition. (Crawford v. Williams, 1 Swan, (Tenn.) 340; Milan v. Williams, 47 Tex. 222; Holford v. Alexander, (12 Ala.) 46 Am. Dec. 257; Collins v. State, 97 Am. St. 366; Dobbs v. State, 62 Kan. 108; Alder v. State, 35 Ark. 517.) The petition clearly follows the requirements laid down by the authorities, and states sufficient facts. (Dobbs v. State, supra; State v. Calhoun, supra; Alder v. State, supra; Holt v. State, 78 Miss. 631; Willard v. State, 158 Ind. 687; Birch v. Trist, 8 East, 415; Bigham v. Brewer, 4 Snead, (Tenn.) 452; Jones v. Pearce, 12 Heisk, (Tenn.) 281.)

*D. A. Preston,* Attorney General, *Ray B. West,* County and Prosecuting Attorney of Big Horn County, and *Enterline & LaFleiche,* for defendant in error.

The office of the writ *coram nobis* is to bring to the attention of the court and obtain relief from an error of fact. (5 Ency. Pl. & Pr. 27.) So far as the record of the principal proceeding is concerned, the petitioner's guilt has been established beyond a reasonable doubt by his plea of guilty. The only purpose of the writ in this case is to correct the alleged error of fact, that is, to enable an innocent man to be relieved of a judgment declaring him guilty. If he is in fact guilty of the crime, then as a legal conclusion it follows that there was no error of fact to be corrected. Hence, it is necessary that the petitioner should allege his innocence of the crime, and that he has a valid defense to the criminal charge. It is also necessary that it be alleged and shown

that the petitioner has not been guilty of laches in asserting his innocence at the earliest possible moment after the commission of the alleged error. It is not enough to say that he is entitled to his constitutional rights. The petition is insufficient because it alleged neither that the petitioner is innocent of the crime nor any excuse for the great delay in presenting the petition for the writ.

It is conceded that relief by writ of error *coram nobis* may be had in this state in proper cases, but the facts necessary to entitle a party to that relief have not been shown in this case. If the facts alleged in the petition existed, that is, the condition in the county therein alleged for many months prior to the plea of guilty, ample, adequate and speedy relief could have been granted him upon application for change of venue. Having failed to apply for that remedy, he should not now be permitted to take advantage of his own negligence. It does not appear by any averment in the petition that the alleged error of fact was known or unknown to the trial court. Such an averment is essential, because if known to the court it would not be an error of fact but one of law and the trial court could then have refused to accept the plea of guilty. (Wheeler v. State, (Ind.) 63 N. E. 975; Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29.) The petitioner was confined in the county jail five months under the extraordinary circumstances alleged in his petition, standing charged by three indictments with that many separate and distinct murders, besides the crime of arson. It manifestly appears that the officers of the county more than did their duty, that the court surrounded the prisoner with every protection, and, as a consequence no harm was done or violence offered. The petitioner is unable to specify in his petition a single act of lawlessness, disorder or violence against his person, or that he was interfered with in any degree with the exercise of his constitutional rights, or at least that precluded an application for change of venue. The case at bar does not present the situation shown in the reported cases where the writ was allowed.

There should be some limitation upon the right to bring this sort of proceeding, and we believe that it is limited as to time. (Jeffery v. Fitch, 46 Conn. 601; Weaver v. State, 5 Tex. 286.) The powers of the writ *coram nobis* have been much reduced. See Baird v. State, (Ark) 99 S. W. 837, where the writ was refused.

. The proposed amendment to the petition though voluminous covered but one defect in the petition, viz: The failure to allege that the petitioner was innocent and had a valid defense. But in this particular the proposed amendment was insufficient, and was properly rejected because it did not disclose what the defense was. The proposed amendment by alleging that all the people of the state in every county were so biased, prejudiced and interested that he could not have had a fair and impartial trial at any place in the state is frivolous and ridiculous and entitled to no consideration. The principle announced in Wheeler v. State, supra, should control in the case at bar, viz: That the writ will not be granted after trial and conviction, except where it clearly appears from facts not on the face of the record that the petitioner had a valid defense, but which, without negligence on his part, was not made because of duress, fraud or excusable mistake; the facts relied upon being such, if known in season, as would have prevented the judgment. The affidavits presented by the defendant upon the motion to quash were, we submit, properly presented and considered upon the doctrine of laches.

BEARD, CHIEF JUSTICE.

This is a proceeding in error brought by Milton A. Alexander against the State of Wyoming to reverse the order and judgment of the District Court of Big Horn County in denying an application of said Alexander for a writ of error *coram nobis*.

The petition for the writ is very lengthy, consisting of more than thirteen pages of closely typewritten matter, the material allegations of which we will endeavor to state as

briefly as possible and in chronological order. It is alleged that on May 6, 1909, three indictments were returned by a grand jury in the District Court of Big Horn County charging the petitioner, Milton A. Alexander, Ed. Eaton, Thomas Dixon, George Saban, Albert A. Keyes, Charles Ferria and Herbert Brink with the crime of murder in the first degree for the killing of Joseph Allemand, Joseph Emge and Jules Lazier, on or about April 2, 1909. That it was alleged and maintained by the prosecution that each and all of said parties were killed and murdered at the same time and place, and that all of said defendants killed and murdered each of said parties. That on May 8, 1909, indictments were also returned against said defendants charging them with the crime of arson for the burning of two sheep wagons belonging to said Allemand and at the same time said parties. were alleged to have been murdered. That the defendants were immediately arrested on said charges and confined in the jail of said county. That on May 10, 1909, the petitioner applied to said court to be admitted to bail, which was denied. That on October 18, 1909, petitioner filed in said court his pleas in abatement to said indictments, which pleas were sustained by the court October 25, 1909, and on the same day the county and prosecuting attorney of said county filed informations against said defendants containing the same charges as the indictments which had been set aside. That the defendants were arraigned October. 27, 1909, and each pleaded "not guilty." That on October 29, 1909, the court ordered that a venire of one hundred names be drawn and summoned as trial jurors for the term, and made returnable November. 3, 1909. That on said last mentioned date petitioner moved the court to require the prosecutor to endorse on the information the names of. the witnesess expected to be used against petitioner, and the court ordered that to be done by the following day. That on November 4, 1909, the defendant, Herbert Brink, was placed on trial on the information charging him with the murder of said Joseph Allemand; that in impaneling a jury in said case, a

total of thirty-eight names were drawn from the jury box, ten were excused for cause, the state challenged four and the defendant twelve peremptorily, twelve being accepted as the jury, which, on the conclusion of the trial, on November 11, 1909, returned a verdict of guilty of murder in the first degree. That on said November 11th, Thomas Dixon was placed on trial on the information charging him with the murder of said Allemand, and a total of thirty jurors were called into the jury box, four being excused for cause, the state challenging two and defendant twelve peremptorily, and twelve were accepted as jurors in said cause. That in 1909, the population of Big Horn County was about 5,000, the vast majority of whom were and had been engaged in raising either cattle or sheep; and that range troubles and controversies existed between the sheep men and cattle men, resulting in frequent controversies and often in physical violence and that ill feeling existed between them. That Allemand and Emge were reputed sheep owners ranging their sheep in said county. That when it was reported that Allemand, Emge and Lazier were killed and the wagons burned, the minds of the sheep men became inflamed against the cattle men and charged that the killing and burning were the acts of cattle men on account of said ill will. That when the indictments were returned threats of mob violence were repeatedly indulged in against nearly all of said parties and particularly against the petitioner. That as the time for trial approached it became the usual and sole topic of conversation among the residents of the county, and that the sheep men raised vast sums of money to assist in the prosecution, and employed attorneys and detectives for the purpose of securing a conviction of said parties whether said conviction was right or proper. That immediately before and during the trial of Brink the population of Basin, the county seat of said county, was in constant fear of murders, riots and mob violence. "That the county officials of Big Horn County, Wyoming, and particularly the sheriff, became alarmed for the general safety of the people of the

community and they called upon the Governor of the State of Wyoming for protection and aid in preventing disturbances and preserving peace, order and the lives of the people residing in said town of Basin and in said Big Horn County." That a portion of the National Guard was sent to Basin and remained there until after the trial of Brink and were engaged in guarding the jail and town. That at divers times between October 25th and November 13, 1909, members of said guard stated to petitioner that they momentarily expected to see the jail blown up; that threats had been made to dynamite the jail and kill the inmates thereof; and that the sheriff had told him that he had been advised that the jail would be blown up and he was greatly afraid of trouble. That at the time there were in Basin large numbers of both sheep and cattle men who were armed and that there were threats of personal violence between them, and threats of death and bodily harm were made against the friends of petitioner and other defendants if they did not testify against them. That during the ten days prior to November 13th he was constantly being besieged and importuned by his friends to withdraw his plea of not guilty and to enter a plea of guilty for the reason that if he did not do so he would endanger the lives and liberties of his family and friends and was placing his own life and liberty in jeopardy. That he could not procure a fair trial; "that the jurors who had been summoned, even though some of them might be honest, just and fair minded men, that they were in fear of their lives and dare not do justice to this petitioner or to any of the other parties hereinbefore mentioned." That a verdict of guilty of murder in the first degree had been rendered against Brink on the same charge and that he could not expect a different result in his case. The petition at great length reiterates and elaborates the statements as to the alleged conditions at the time and that these matters were communicated to him by his friends and attorneys and by the friends and attorneys of the other defendants and that they counseled, insisted and advised this

petitioner to withdraw his plea of not guilty and to enter a plea of guilty of murder in the second degree; and that laboring under the influence of such fears, intimidation, duress and terror he entered a plea guilty of second degree murder on the 13th day of November, 1909; and on his plea was sentenced to the penitentiary for a term of not less than twenty or more than twenty-six years.

On behalf of the state a motion was filed to quash the writ and dismiss the petition on the grounds, First: That the petition failed to state facts sufficient to entitle the petitioner to a writ of error *coram nobis,* or to the relief demanded: (1) because it appears from the petition that petitioner knew of the excitement and prejudice complained of in ample time to apply for a change of venue or for a continuance; (2) because it is not alleged why he did not apply for a change of venue or a continuance; (3) because there is no allegation that he was prevented from so doing; (4) because it appears he was negligent in not applying for a change of venue or a continuance; (5) because it does not appear that the petitioner had a valid defense in the facts of the case but which without negligence on his part was not made because of duress, fraud or excusable mistake; (6) because it does not appear that the facts complained of were unknown to the court or judge thereof when sentence and judgment were pronounced.

Second: That this proceeding was not commenced within ten days after the entry of judgment, and no excuse for delay is shown.

Third: That the proceeding was not commenced within one year from the rendition of judgment, and no excuse for delay is shown.

Fourth: That petitioner has been guilty of such laches in commencing this proceeding as will prevent and preclude the state from properly prosecuting the cause if the petition is sustained and a new trial granted.

Two affidavits were attached to the motion in support of the last ground mentioned, to the effect that certain material

witntsses for the state were then beyond the jurisdiction of the state and their place of residence unknown. Petitioner filed a motion to strike out these affidavits which was denied. Petitioner also asked leave to file an amendment to his petition, verified by one of his attorneys, which was refused. The court sustained the motion to quash, and dismiss the petition, and the case is brought here for review.

This case is an unusual one and so far as we have been able to learn is the first of the kind presented to the courts of this state. Counsel for the state do not in their brief or argument controvert the right to a writ of error *coram nobis* in a proper case. We shall not therefore discuss that question but shall confine ourselves to the question of the sufficiency of the showing made to entitle the applicant to the writ, assuming that such a proceeding can be maintained in this jurisdiction.

"A writ of error *coram nobis* is not a writ of right. Before it is allowed, there must be an affidavit of some error in fact; by which, in case the fact to be assigned for error is true, the plaintiff's right of action will be destroyed." (Tyler v. Morris, 4 Dev. & B. Law, 487, 20 N. C. 625; 34 Am. Dec. 395.) "Such a writ does not issue of course but upon sufficient cause shown. In Farris v. Douglass, 20 Wend. (N. Y.) 627, Bronson, J., said: 'The writ can only be issued on motion to this court, and cause shown by affidavit. It must appear with reasonable certainty that there has been some error in fact before the writ will be allowed.' The case of Ribout v. Wheeler, Sawer's R. 166, is to the same effect. See also Smith v. Kingsley, 19 Wend. (N. Y.) 620. These cases clearly show that the writ is not demandable of right, and will not be allowed to issue unless cause is shown." (Higbie v. Comstock, 1 Denio, (N. Y.) 652.) In Asbell v. State, 62 Kan. 209, 61 Pac. 690, that court said: "Our code provides how errors may be corrected in the courts in which they occur, and to the extent that provision is so made it is necessarily exclusive of common-law writs and procedure. This writ, instead of superseding the statu-

tory provisions, is only employed in aid of them, or where the statute fails to afford a remedy.  * * *  The function of the common-law writ is to bring to the attention of the court for correction an error of fact—one not appearing on the face of the record, unknown to the court or party affected, and which, if known in season, would have prevented the judgment which is challenged.'  And in Collins v. State, 66 Kan. 201, 71 Pac. 251, 60 L. R. A. 572, 97 Am. St. Rep. 361, the court said: "That writ lies only to correct the record of the trial itself in matters of fact existing at the time of the pronouncement of the judgment, in respect of which the court was unadvised, but had it been advised, the judgment would not have been pronounced.  The unvarying test of the writ *coram nobis* is mistake or lack of knowledge of facts inhering in the judgment itself."  See also Hamlin v. State, 67 Kan. 724, 74 Pac. 242; Dobbs v. State, 63 Kan. 321, 65 Pac. 658; Holt v. State, 78 Miss. 631, 29 So. 527. On the authority of the cases above cited and many others which we have examined it appears to be uniformly held that the writ will not issue for any cause for which the statute provides a remedy, and that its functions are strictly limited to an error of fact for which the statute provides no other remedy and which facts do not appear of record or were unknown to the court at the time of pronouncing judgment and which, if known, would have prevented the judgment, and which were unknown and could not by the exercise of reasonable diligence have been known to the party in time to have been otherwise presented to the court, unless, as is argued in this case, he was prevented in so doing by duress or fear or other sufficient cause; and that it must be shown to a reasonable certainty by affidavit or sworn petition that such error of fact existed and resulted in an erroneous judgment.  In this case the petition is verified by the petitioner to the effect "that the same is true of his own knowledge, except as to matters therein stated on information and belief, and as to such matters he believes them to be true."  The application is not supported by the affidavit of

any other person. The alleged errors of fact are that there was great excitement in the community and prejudice against the petitioner to such an extent that a fair trial was impossible, and that he was in such fear of mob violence that he was induced against his will to withdraw his plea of not guilty and to enter a plea of guilty. Our statute, (sec. 5147, Comp. Stat. 1910, sec. 4286, R. S. 1899) provides for a change of venue in case of excitement or prejudice against a defendant in a criminal action; and there is no allegation in the petition in this case that the petitioner was prevented by fear of mob violence or for any other cause from applying to the court for such change, while it does appear that he and his counsel knew of such alleged excitement and prejudice in ample time to have made such application. Having failed to apply for such change, he cannot make that complaint in this proceeding. But it is here argued that although it is not alleged that he was prevented by fear to make an application for a change of venue or a continuance, it sufficiently appears from the allegations of the petition that such was the fact. We will consider that question in connection with the allegation that the plea of guilty was induced by fear of mob violence. It is not enough that the petitioner avers that he was induced by fear to enter the plea of guilty, but facts must be stated which show a reasonable basis for a well-grounded fear as claimed. It is alleged at length and repeatedly that there was hostility and ill feeling existing between the sheep men and cattle men of Big Horn County and that Allemand and Emge were reputed sheep owners ranging their sheep in said county, and that when it became known that they had been killed it aroused the sheep men and they charged it to be the act of cattle men, etc.; but at no place in the petition is it alleged that the petitioner or either of the other accused parties were then or ever had been engaged in the cattle business. It is only by inferring that the accused were cattle men that the alleged hostility between the two classes could create in the mind of petitioner any unusual apprehension of danger

on that account. And the fact that the sheep men had raised money and employed attorneys and detectives to aid the prosecution would not indicate a desire or intention on their part to indulge in mob violence, but rather to assist in the enforcement of the criminal laws of the state by the lawfully constituted authorities in the courts. It is also alleged that the county officers, and particularly the sheriff, became alarmed, not on account of threatened mob violence to the prisoners, but "for the general safety of the community." It is further alleged that in the impaneling of the juries in the Brink and Dixon cases sixty-eight jurors were called, only fourteen of whom failed on their *voire dire* to qualify as competent jurors in those cases. Under our system of securing trial jurors these men must have been selected by lot from a list of names selected from the last assessment roll of the county by the chairman of the board of county commissioners, the county treasurer and the county clerk, of all persons whom they believed to be competent and qualified to serve as jurors; the list to be so made on the second Monday of January of each year. (Sec. 983 et seq., Comp. Stat., 1910.) The jurors so drawn therefore came from the body of the county and from all vocations, and the fact that such a large majority of them qualified would seem a sufficient answer to the allegation that there was such excitement and prejudice against the petitioner as to prevent a fair trial or to cause him to be alarmed by fear of receiving injustice by the verdict of a jury. It further appears that about October 18th, petitioner filed pleas in abatement to the indictments returned against him, which pleas were sustained by the court October 25th, and on the same day the informations were filed, and on October 27th, he was arraigned thereon in open court and entered his plea of not guilty, and on November 3rd, he moved the court to require the names of the witnesses to be endorsed on the information, which the court ordered to be done by the next day. The trial of Brink commenced November 4th, and the verdict was returned November 11th, when Dixon's trial com-

menced, and on November 13th, petitioner withdrew his plea of not guilty and tendered a plea of guilty to murder in the second degree, which was accepted by the court. During all this time, from October 18th to November 13th, the business of the court seems to have proceeded in an orderly manner without interruption, and not a single act of violence or attempted violence is alleged. There were no riots or other disturbances, and it is not charged that the court and its officers were not at all times able and willing to fully protect the petitioner and the other accused parties. They were represented by attorneys and it does not appear that they were in any manner interfered with, hindered or obstructed in the discharge of their duties or in presenting to the court any matter they desired. It is true that it is alleged that members of the National Guard told petitioner that they expected the jail to be blown up and the inmates killed, and that the sheriff told him he had been advised that the jail would be blown up and that he was greatly afraid of trouble; but these statements must be considered in connection with the other facts stated in determining what the actual situation was and whether all of the facts stated when considered together formed a basis for such reasonable apprehension of mob violence as to force from the petitioner an involuntary plea of guilty. Another fact which is not without significance is that the petitioner did not change his plea until after the verdict had been returned in the Brink case and Dixon had been put on trial; and the plea he then entered was guilty of murder in the second degree only—not an unusual occurrence where murder in the first degree is charged, and especially when a verdict in the first degree has been returned against a co-defendant. When this plea was tendered and accepted by the court the community peaceably submitted to the lawful authority and refrained from violence. The case is quite similar in many respects to the case of Wheeler v. State, 158 Ind. 687, 63 N. E. 975. In commenting on the case of Sanders v. State, 85 Ind. 318, 44 Am. Rep. 29, a case cited and much relied upon by coun-

sel for petitioner, the court said: "In the case before us the situation is wholly different. * * * At no time, after the homicide was committed until judgment was entered on the verdict, was there any attempt by any one to interfere with the regular and orderly proceedings of the court. These facts, all of which are of record, positively contradict the statements of the appellant that he was constrained by threats and fear to forego any right which the law secured to him, and prove that, even if his fears for safety were excited, those fears were not well grounded. Popular excitement, and indignation are natural results of shocking crimes, and it is not expected that a community will remain calm and unmoved when such offenses are perpetrated in its midst. But the existence of sentiments of grief and horror, even when they are given audible expression, does not of itself always constitute sufficient ground for a belief on the part of the accused that he dare not demand the rights secured to him by law. The appellant was under no such apprehension or duress. He asserted those rights, and, in every instance, they were accorded to him by the court. The community submitted to the authority of the law and refrained from violence. It appears from the incontestible evidence of the record itself that the court, throughout the proceedings, had the ability and the inclination to afford to the appellant the protection from mob violence to which he was entitled, and that it gave him the opportunity to exercise every privilege secured to him by the constitution and laws." So in this case it appears from the petition that the court extended to petitioner and his attorneys every privilege to which he was entitled and neither he nor his attorneys seem to have at any time suggested to the court or judge that greater protection was required or desired; nor is it alleged that the true situation was not known to the court at the time the plea of guilty was tendered and accepted; nor is it averred that the petitioner is not guilty of the offense to which he entered his plea. A consideration of all of the allegations of the petition, in our opinion, fails to show such

reasonable grounds for apprehension of mob violence as induced the petitioner to involuntarily enter the plea which he did, and that the court did not err in dismissing the petition.

It is also assigned as error that the court erred in refusing to allow petitioner to amend his petition. The amendment offered was verified by the attorney only, on information and belief. It was properly refused for that reason if for no other. (Reid v. Hoffman, 53 Tenn. 440.) The leave to amend was within the discretion of the court and does not seem to have been abused. As we have decided the case on the question of the sufficiency of the petition to entitle the petitioner to a writ of error *coram nobis,* and hold it insufficient, it is not necessary to discuss or decide other questions presented.

The judgment of the district court is affirmed.

*Affirmed.*

SCOTT and POTTER, JJ., concur.