[Crim. No. 5795.   Second Dist., Div. Two.   Mar. 29, 1957.]

THE PEOPLE, Respondent, v. HOMER W. SNOWDEN, Appellant.

Belli, Crowley & Ford, Arthur J. Crowley and Robert E. Ford for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

FOX, J.—This is an appeal by defendant Homer W. Snowden from a judgment of conviction and from an order denying his motion to set aside and vacate said judgment and to withdraw his pleas of guilty to counts 2 and 3 of an indictment and to permit him to enter pleas of not guilty thereto.

As a result of certain financial transactions with the Constitution Life Insurance Company in November, 1951, the Los Angeles County grand jury on May 3, 1955, returned an indictment charging W. Solon Snowden, Ross Bohanon, A. D. Hudspeth and Homer W. Snowden (appellant herein) with one count of conspiracy (Pen. Code, § 182) and thirteen counts of grand theft[1] (Pen. Code, § 487, subd. 1).

---

[1] A total of $278,934.60 was assertedly involved in these transactions. The insurance company appears to have been fully reimbursed together with interest.

Defendant Homer W. Snowden employed J. W. Ehrlich, Esq., to represent him for a fee of $56,000[2] which he assertedly paid. After pleading not guilty to all counts, defendant Homer W. Snowden on April 20, 1956,[3] changed his plea to guilty as to counts 2 and 3 of the indictment. In that respect the reporter's transcript discloses the following proceedings:

"MR. EHRLICH: Your Honor, may the defendant Homer Snowden be given permission at this time to withdraw his former plea of not guilty for the purpose of entering another and different plea as to Counts 2 and 3 of the indictment?

". . . . . . . . . . . .

"THE COURT: Mr. Homer Snowden, permission has been requested by your counsel for permission for you to enter a plea of guilty to the charges contained in Counts 2 and 3. Are you familiar with those charges, sir?

"DEFENDANT HOMER SNOWDEN: Yes, sir.

"THE COURT: And are you pleading guilty to those charges freely and voluntarily and because you believe you are guilty of those offenses?

"DEFENDANT HOMER SNOWDEN: Yes, sir.

"THE COURT: Has anybody forced you or persuaded you to plead guilty to those charges against your will and without your consent?

"DEFENDANT HOMER SNOWDEN: No, sir.

"THE COURT: Has anybody given you any promise of reward or hope of immunity or lenience for pleading guilty?

"DEFENDANT HOMER SNOWDEN: No, sir.

"THE COURT: And the People having indicated that is satisfactory, you may rearraign each[4] defendant as indicated, Mr. Lindley."

At the time of arraignment for judgment on August 10, 1956, the court pointed out to defendant Homer W. Snowden (hereinafter referred to as the defendant) that it is alleged in the indictment that "you were absent from the State of California for *the* period from November, 1952, to the date of the return of this indictment" (emphasis added) and inquired whether he admitted that allegation. Mr. Ehrlich responded:

---

[2] This fee did not include counsel's per diem for the trial.

[3] At this same court session the indictment against Bohanon was dismissed on motion of the district attorney and defendant W. Solon Snowden entered a plea of guilty to counts 6 and 10.

[4] The other defendant rearraigned at this time was W. Solon Snowden.

"We will have to admit that we were not here under all those circumstances.

"THE COURT: Mr. Snowden, then do you admit the allegation that you were absent from the State of California for a period from November, 1952, to the date of the return of this indictment; is that correct, sir?

"MR. EHRLICH: The answer is 'Yes,' Mr. Snowden.

"THE COURT: Do you answer that 'Yes'?

"DEFENDANT HOMER W. SNOWDEN: Yes."

Thereafter, Mr. Ehrlich stated there was no legal cause for not disposing of the matter and addressed himself to the question of probation for his client.[5]   Probation, however, was denied and the defendant was sentenced to the state prison, the sentences on the two counts to run concurrently. The remaining counts were dismissed.

On August 23, 1956, defendant filed a motion to vacate the judgment and to withdraw his plea of guilty, and to enter pleas of not guilty on counts 2 and 3, on the grounds that:

1. The court lacked jurisdiction over the offenses in question because it was alleged they were committed in November, 1951, and thus the statute of limitations had run.

2. He was never advised as to his rights relative to the application of the statute of limitations.   Had he been advised, he would not have pleaded guilty.

3. He is innocent but pleaded guilty by reason of fraud exercised upon him, in that his attorney represented and the deputy district attorney concurred that if he pleaded guilty he would be pleading guilty to a misdemeanor, and that he would be placed on probation; and, relying on these representations, he pleaded guilty.

In an affidavit in support of his motion defendant stated, *inter alia,* that his attorney, Mr. Ehrlich, had advised him that if he plead guilty to counts 2 and 3 of the indictment he would be pleading guilty to misdemeanors[6] only and that he would get probation.   This was on the morning of April

---

[5]W. Solon Snowden, who was represented by Robert Eaton, Esq., was granted probation on this occasion.

[6]The idea that these transactions were only misdemeanors, or might be so considered, is based on the provisions of section 1101 of the Insurance Code, which prohibits anyone who is an officer of an insurance company, or who has authority in the management of its funds, from borrowing from the company. The theory is that defendant had such authority and that since the transactions here in question were in the form of loans to defendant the provisions of this section were thus violated; and that since no penalty is expressly provided therefor the violations would thus be classed as misdemeanors.

20, 1956, prior to the opening of court. Defendant further states in his affidavit: ''That Mr. Ehrlich then called Mr. Logan Lindley, the Deputy District Attorney, over and stated to him in my presence that if I pleaded guilty to counts 2 and 3 of the indictment, the other charges would be dismissed and that the Deputy District Attorney would then submit a statement to the court that no one had lost any money as a result of the dealings that I was charged with, and that I would be pleading guilty to two misdemeanors and would receive probation. That at this time Mr. Lindley then replied, 'That is the understanding.' ''

The defendant further stated that ''at the time'' he was feeling so weak and ill that he could hardly stand up and felt he was going to faint at any moment. However, he stated earlier in his affidavit that he told Mr. Ehrlich on that morning (April 20th) that he wished to go to trial, the case being set for trial on April 23d. Other affidavits were filed on behalf of defendant detailing his physical disabilities and indicating that some of them were of a serious nature.

On this occasion in addition to Mr. Ehrlich the defendant had present two other lawyers—Lester May and Dan Gibbs, Esquires—from Texas. May had conferred with Ehrlich in San Francisco and, on April 19th, had telephoned defendant to be in court the next morning and had advised him of the purpose of this appearance.

Deputy District Attorney Lindley testified that he never told the defendant or his attorney that if the defendant pleaded guilty to two counts of the indictment they would be misdemeanors, or that the defendant would be given a county jail sentence or probation and Lindley further testified that he never heard Mr. Ehrlich make a statement to that effect or that the deputy district attorney would submit a statement to the court that no one had lost any money as a result of the dealings with which the defendant was charged. Nor, did he ever state to Mr. Ehrlich that it was his understanding that the defendant would be given probation.

Mr. Ehrlich did not testify at the hearing on the motion to vacate the judgment and to withdraw the pleas of guilty, nor did he file any affidavit in support of defendant's motion.

At the hearing on the motion the record preliminary to the defendant's change of pleas, as set out above, was read to the court.

No suggestion appears to have been made at the probation hearing or when the defendant was sentenced to the state

prison that the offenses to which he had pleaded guilty and for which he was being sentenced were only misdemeanors.

In seeking a reversal defendant makes three contentions: (1) he was suffering from such physical and mental disabilities that his free will and clear judgment were overreached to such a point that he was incapable of having any free will; (2) he changed his plea to guilty on the representation of his attorney, corroborated by the deputy district attorney handling his case, that he would be pleading guilty only to two misdemeanors and would be granted probation; and (3) the statute of limitations had expired and the judgment was therefore void. None of these contentions warrant a reversal.

Defendant's first and second contentions involve purely factual considerations which the trial court has resolved against him. Because of defendant's obvious interest in the outcome of this proceeding the trial court was not required to give full credence to his statements either in his affidavit or on the witness stand. It was also the trial court's responsibility to evaluate the opinions of the doctors who had examined the defendant, some of which were quite indecisive, as, e.g. that of Dr. Marcus Crahan who opined that defendant had "a complicated series of organic abnormalities which taken in combination present a picture of serious illness with the immediate as well as the remote prognosis *guarded.*" (Emphasis added.)

■ On this eventful occasion defendant not only had at his side eminent California counsel but also two lawyers from a sister state, one of whom had consulted with Mr. Ehrlich and had arranged the day before for defendant to be in court that morning and had explained to him the purpose of the court appearance which was undoubtedly to change his plea since the case was set for trial the following Monday. It does not appear that defendant made any complaint to the probation officer that he had been incapable of exercising his free will and forming an independent judgment at the time he entered his pleas of guilty on April 20th. No such suggestion was made by counsel at the probation hearing and pronouncement of judgment on August 10th. Ten days later, however, he signed an affidavit indicating he was too ill and too disturbed to exercise an independent judgment. In evaluating this plea the trial court was entitled to take into consideration these facts: The physical appearance of the defendant on April 20th when he pleaded guilty; that four

months had gone by since the change of plea, probation had been denied, and a prison sentence pronounced without any suggestion on the part of defendant or his counsel that defendant was not capable of exercising an independent judgment. In these circumstances it cannot be said, as a matter of law, that the trial court abused its discretion in the premises.

As to defendant's second contention; viz., that he was induced to change his pleas by reason of representations of his attorney,[7] concurred in by the deputy district attorney, that he would only be pleading to misdemeanors and would get probation, the evidence is in sharp conflict. Mr. Lindley, the deputy district attorney, denied making any such statements either to defendant or to Mr. Ehrlich, and denied hearing Mr. Ehrlich make any such statements to the defendant or otherwise.[8] The trial court resolved this conflict against the defendant and such resolution is binding on this court.

---

[7]If defendant changed his pleas solely on the advice of his counsel he clearly is not entitled to any relief. (*People* v. *Sciunzi*, 140 Cal.App. 70, 71 [34 P.2d 1044]; *People* v. *Gottlieb*, 25 Cal.App.2d 411, 415 [77 P.2d 489]; *People* v. *Ayala*, 138 Cal.App.2d 243, 249-250 [291 P.2d 517].)

[8]On this phase of the hearing Deputy District Attorney Lindley testified, in part, as follows:

"Q. [By Mr. Stovitz] Did you ever tell Mr. Ehrlich that if the defendant pled guilty to two charges that they would be misdemeanors?

". . . . . . . . .

"THE WITNESS [Deputy District Attorney Lindley]: I did not.

"Q. BY MR. STOVITZ: Did you ever tell Mr. Ehrlich that the defendant Homer W. Snowden or any of the defendants would be given a County Jail sentence? A. I did not.

"Q. Or that Mr. Homer W. Snowden would be given probation? A. I did not.

". . . . . . . . .

"Q. Did you ever hear Mr. Ehrlich say that morning on April 20th either in the presence of Mr. Homer W. Snowden or out of the presence of Homer W. Snowden that if Homer W. Snowden pled guilty to counts two and three of the indictment the other charges would be dismissed and that the Deputy District Attorney would then submit a statement to the Court that no one had lost any money as a result of the dealings that Homer W. Snowden was charged with and that Homer W. Snowden would be pleading guilty to two misdemeanors and would receive probation? A. No, sir.

"Q. Did you overhear any portion of that statement? A. I overheard no portion of that statement.

"Q. Did you ever state to Mr. Ehrlich in the presence of Mr. Homer W. Snowden or any other time that it was your understanding that Homer W. Snowden would be given probation? A. I did not.

"Q. Or that it was your understanding that Mr. Homer W. Snowden was pleading guilty to two misdemeanors? A. I did not.

"Q. Now, Mr. Lindl[e]y, did you at any time make any representations to Mr. Ehrlich or to anyone else as to what the punishment in this case would be? A. I did not."

In summing up the factual aspects of the hearing the trial judge made the following pertinent observations:

"THE COURT: This is, as far as I can see, another case we run into occasionally where a person gambles and loses. . . . [T]his Court cannot find that there was anything done by the Court or any responsible officer of the Court that would overreach the free and unimpaired judgment of the defendant. I asked him at the time the plea was entered if it was done freely and voluntarily and because he believed he was guilty of the offense, and he said unequivocably [sic], 'Yes,' and all during the proceedings from the date of the plea on April 20 to the date of the sentence on August 10, not one word was indicated to the Court through the probation officer or through any other mediums that he was not entering that plea of guilty freely and voluntarily. Only after August 10 when he finds out that the gamble he took did not pay off, then he wants to come in and get his stakes back."

There is no merit in defendant's final contention that the statute of limitations had run on these offenses and therefore the judgment was void. True, the offenses were alleged to have been committed in November, 1951, and the applicable statute of limitations is three years (Pen. Code, § 800). But the indictment contained the allegation: "That the defendants were absent from the State of California for the period from November, 1952, to the date of the return of this indictment."

The time a defendant is absent from the state is excluded in determining whether the statute of limitations is a bar to his prosecution. (Pen. Code, § 802; *People* v. *Newell*, 192 Cal. 659, 669-670 [221 P. 622]; *People* v. *Levine*, 114 Cal. App.2d 616, 617 [250 P.2d 645].)

In the instant matter, the defendant, in response to questions by the court, admitted the allegation in the indictment that he was "absent from the State of California for *the* period from November, 1952, to the date of the return of this indictment." (Emphasis added.)

Defendant makes a quibbling argument based on the circumstance that when the trial judge repeated to defendant the inquiry whether he admitted he was absent from the state from November, 1952, to the date the indictment was returned he used the article "a" rather than "the" with reference to the period of such absence. Defendant replied in the affirmative. He now argues that such answer is not an admission that he had been absent from the state for *the* period from

November, 1952, to the date the indictment was returned. When the judge asked the question initially he used the words ''the period'' in the context quoted in the preceding paragraph. Mr. Ehrlich said he understood the matter and proceeded to give an affirmative reply. The court however required the personal acknowledgment of the defendant and suggested that Mr. Ehrlich so advise the defendant. The court then repeated the question but used the article ''a'' instead of ''the'' before the word ''period.'' Mr. Ehrlich advised the defendant, ''The answer is 'Yes,' . . .'' The defendant then answered in the affirmative. In the context there is no reasonable basis for believing that either the defendant or his attorney was either misled or confused. At the time of the probation hearing and pronouncement of sentence there was no suggestion that defendant had not been absent from the state for *the* period in question.

The judgment and order are affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1957.