[Crim. No. 5918.   Second Dist., Div. Two.   Sept. 13, 1957.]

THE PEOPLE, Respondent, v. BORIS GRGUREVICH et al., Appellants.

Gladys Towles Root, Eugene V. McPherson and Burton Marks for Appellants.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendants Boris Grgurevich and Stanley H. Mendell appeal from an order denying a motion to set aside their pleas of guilty upon which they had been sentenced to state prison for the term prescribed by law.

The information was in two counts, the first of which charged defendants with possession of marijuana and the second with possession of heroin. Initially, each defendant entered a plea of not guilt to each count. When the case was called for trial, Mr. J. T. Forno, who was attorney for defendant Grgurevich, stated to the court that his client wished to withdraw his plea of not guilty to count I and to enter a plea of guilty to the same. Mr. William Hall, who was attorney for defendant Mendell, made the same statement on behalf of his client. The deputy district attorney then asked defendant Grgurevich a series of questions and received answers as follows: "MR. LEWIS: Are you pleading guilty freely and voluntarily? DEFENDANT GRGUREVICH: Yes. MR. LEWIS: Has anyone made any promise to you of any kind? DEFENDANT GRGUREVICH: No. MR. LEWIS: Are you pleading guilty because you really are guilty? DEFENDANT GRGUREVICH: Yes. MR. LEWIS: You are accused by the District Attorney of Los Angeles County in Count 1 of Information 184550 with violation of section 11500 of the Health and Safety Code of California, a felony, committed by you on the 16th day of September, 1956, in that you had in your

possession the flowering tops and leaves of Indian hemp, also known as marijuana; how do you now plead to that offense, guilty or not guilty? DEFENDANT GRGUREVICH: Guilty.'' The same questions were put to defendant Mendell, who gave the same replies. The court then granted them leave to file application for probation and continued further proceedings until January 9, 1957. At that time probation was denied, each defendant was sentenced to prison upon count I, and count II of the information was dismissed as to each.

On January 18, 1957, said defendants gave notice of motion to vacate their pleas of guilty, supported by their respective affidavits. That of Grgurevich says: ''[T]hat your affiant was not guilty of the offense as charged and believed that he was not guilty of said offense, but that in spite of such statements to his counsel Joseph Forno, your affiant was informed by his counsel that if he would plead guilty he would be assured of straight probation; that your affiant's free will was over-reached and your affiant was in a very nervous and upset condition; that your affiant further did not realize the consequences of a plea of guilty at the time it was entered. That your affiant is unfamiliar with courtroom procedure and believed in truth and in fact that he would receive probation in exchange for his pleading guilty to the offense as charged; that your affiant believes he is not guilty of the offense and has talked to his present attorney and is informed and believes and upon such information and belief alleges that he has a meritorious defense and that the law enforcement officers made an improper search of his premises, and that if the facts were brought before the Court your affiant would not be convicted due to the illegal conduct on the part of the police officers who arrested him.'' Mendell's affidavit is in identical language except for the name of counsel. In the main, the averments are a series of conclusions. Neither the notice of motion nor the affidavit charges or implies that anyone attached to the district attorney's office or the court did or said anything directly or indirectly supporting, inducing or encouraging, any of the things alleged to have been stated to the defendant by his own attorney. During argument of the motion the attorney then representing defendants, said: ''We are not contending, we are not laying our stress upon any extrinsic fraud or any promises or this or that or the other thing. . . . These men are not lawyers. They were depending upon the advice to be given to them by their lawyers.''

Mr. Forno was called as a witness and testified that he discussed with Grgurevich the advisability of pleading to one count and the possibility of having the matter referred to the probation department; he explained to his client that in his opinion Grgurevich would be eligible for probation because he had not been convicted of a prior felony: "I advised him that in my opinion he would have an excellent chance for probation, because of the fact that he had no prior felony record, or misdemeanor record for that matter;" "Q. Did you advise Boris Grgurevich that if he would plead guilty, he would be assured of straight probation? A. Absolutely not, Your Honor. Q. Did you say anything at all about his having probation, receiving probation, other than you have just told us? It will not be necessary for you to repeat that. A. No. I think I explained to him that if he was granted probation, there would be a possibility he could receive straight probation, there would be a possibility he might have to do County Jail time as a condition of probation. I said, 'This is entirely up to the court.' " He also testified that Mr. Lewis, the trial deputy district attorney, made no statement to him and that none of the investigating officers did so; "No statements were made at all, and none were related to Mr. Grgurevich." The witness further said: "I did tell him, though, that when the probation officer had the interview with him, he would ask him about the whole case, the whole transaction, and that he should try to make a good impression upon the probation officer, and that a lot would depend, the whole sentence would more or less depend on the report that the probation officer prepared;" "Q. Mr. Forno, you did, however, discuss with Mr. Grgurevich, did you not, that at the time that he entered a plea to the marijuana charge, that that was what he was pleading guilty to, and that that was what the court would be sentencing him on? A. That is correct. The discussion, I am sure, that Mr. Grgurevich was aware of, was that he was pleading guilty to the count of possession of marijuana." Mr. Hall, the former attorney for Mendell, did not appear at the hearing. Mrs. Root, the attorney who presented the motion, denied any obligation to procure Mr. Hall's presence and stated that she stood upon defendants' uncontradicted affidavits. The court had before it not only the affidavits of defendants and the testimony of Mr. Forno, but also the probation officer's report and a transcript of the preliminary hearing. ▮ Although defendant Mendell insisted upon his innocence when interviewed by the

probation officer, and Grgurevich did so in lesser degree, the court was not bound to accept those unsworn statements in preference to the solemn admissions in open court.

The composite picture presented to the trial judge upon the motion was a joint venture of seven people (including appellants) bent upon buying narcotics in Mexico and smuggling them into this country, one which succeeded to the extent of unlawful importation of 10 *pounds* of marijuana and 10½ grams of heroin. Mendell told Police Officer O'Grady that the group went to Tijuana in two cars and money was given by all of them to Mr. Grgurevich who did the buying of narcotics. Also that they paid for the marijuana on the Mexican side, that it was delivered there and he, Mendell, "attached the brown paper bag to the exhaust," but they had to stop shortly after they arrived in the United States "to take them away from the exhaust because the bags were burning." Grgurevich, when charged with lying, told the police officer: "Yes, I did. The heroin is mine, it all belongs to me. When we came in this morning I stopped and bought a can of milk sugar and I cut the capsules in the house so we would all get an equal share." The foregoing summary is based upon the testimony at the preliminary hearing; neither defendant there testified. Nor did either defendant offer any evidence at any stage of the case except the generalities of the affidavit in support of his motion and his unsworn statements to the probation officer.

■ The motion to set aside the pleas of guilty professes to rest upon section 1018, Penal Code, which in terms authorizes same only if made before judgment. When permitted after judgment, as sometimes occurs (see 14 Cal.Jur.2d § 259, p. 508), it amounts to a motion to vacate the judgment with leave to change the plea. In other words, it is the equivalent of an application for a writ of error *coram nobis.* (See *People* v. *Adams,* 100 Cal.App.2d 841, 842 [224 P.2d 873]; *People* v. *Larsen,* 144 Cal.App.2d 504, 506 [301 P.2d 298].) ■ Principles applicable to such a motion are stated in *People* v. *Ayala,* 138 Cal.App.2d 243, 247 [291 P.2d 517]: " 'The defendant then, if he would set aside such judgment, must proceed as one who is at least prima facie guilty; he, now, is the attacker and has the burden of producing convincing proof of a fact which constitutes a legal ground for setting aside the judgment. The presumption that the judgment is valid in all respects is strong; the interests of justice and of humanity require that its terms be executed promptly if it be not set

aside.' (*People* v. *Shorts, supra,* 32 Cal.2d 502, 508 [197 P.2d 330].) ▮ A defendant's plea of guilty 'is an admission of every element of the offense charged, and constitutes a conclusive admission of defendant's guilt.' (*People* v. *Cooper,* 123 Cal.App.2d 353, 356 [266 P.2d 566].) ''

▮ The evidence must be clear and convincing (*People* v. *Griffin,* 100 Cal.App.2d 546, 548 [224 P.2d 47]; *People* v. *Alexander,* 130 Cal.App.2d 529, 531 [279 P.2d 128]; *People* v. *Ayala, supra,* 138 Cal.App.2d 243, 247), and the trial court's ruling will not be disturbed in the face of conflicting evidence (*People* v. *Snowden,* 149 Cal.App.2d 552 [308 P.2d 815]), or in the absence of some abuse of discretion (*People* v. *Alexander, supra,* at p. 530).

▮ Where defendant relies upon some representation or promise relating to the consequences of a change of plea, such as probation or a light sentence, he cannot prevail unless it appears that the district attorney or other prosecuting official was a party to it. (*People* v. *Ayala, supra,* at p. 249; *People* v. *Snowden, supra,* at p. 674; *People* v. *Sciunzi,* 140 Cal.App. 70, 71 [34 P.2d 1044]; *People* v. *Gottlieb,* 25 Cal.App.2d 411, 415 [77 P.2d 489].)

Appellants rely upon *People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657], and *People* v. *Odlum,* 91 Cal.App.2d 761 [205 P.2d 1106], but both of them support the rule just stated. (See the Gilbert case at p. 443 and Odlum at p. 771.) Another case cited by appellants is *People* v. *McCrory,* 41 Cal. 458, 462, which deals with a change of plea made before judgment. The general language of that opinion cannot prevail over the uniform current of decisions relating to the vacation of a judgment in order to change a plea. Moreover, that case holds that a refusal to permit a change of plea will not be reversed in the absence of an abuse of discretion. There was no such abuse at bar.

The order is affirmed.

Moore, P. J., and Fox, J., concurred.

The petition of appellant Stanley H. Mendell for a hearing by the Supreme Court was denied November 5, 1957.