[No. D034571. Fourth Dist., Div. One. Jan. 18, 2001.]

In re GREG AZURIN on Habeas Corpus.

## Counsel

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Stephen E. Carr, Deputy District Attorneys, for Appellant the People.

Richard P. Siref, under appointment by the Court of Appeal, for Respondent Greg Azurin.

## Opinion

**KREMER, P. J.**—The People appeal from the order of the superior court granting Greg Azurin's petition for a writ of habeas corpus permitting

Azurin to withdraw his plea of guilty to discharging a firearm at an occupied motor vehicle. (Pen. Code, § 246.)[1] The People contend the superior court lacked habeas corpus jurisdiction because Azurin was assertedly not in state custody, either actual or constructive, at the time he filed his petition. We reverse the order.

# I

## INTRODUCTION

Philippine citizen Azurin was a lawful permanent resident of the United States. In March 1990, without being advised by counsel that deportation proceedings would likely be initiated against him as a result of a guilty plea in this case, Azurin pleaded guilty (the 1990 conviction). Azurin served a term at the California Youth Authority, successfully completed parole and was released from actual state custody.

In November 1998, several years after Azurin completed parole, the United States Immigration and Naturalization Service (INS) instituted deportation proceedings against Azurin based upon his 1990 conviction in this case for an aggravated felony.

In February 1999 Azurin petitioned the superior court for habeas corpus. In October 1999, after an evidentiary hearing, the court concluded defense counsel had rendered ineffective assistance at plea negotiations in this case in 1990 by not advising Azurin of the immigration consequences of his guilty plea.[2] (*People v. Soriano* (1987) 194 Cal.App.3d 1470, 1482 [240 Cal.Rptr. 328, 65 A.L.R.4th 705]; cf. *People v. Barocio* (1989) 216 Cal.App.3d 99 [264 Cal.Rptr. 573].) Based upon that conclusion, the court granted Azurin's habeas petition and permitted Azurin to withdraw his guilty plea.

# II

## DISCUSSION

The People contend the superior court lacked habeas corpus jurisdiction since Azurin had completed parole and was thus no longer in constructive

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] The People note that at the time of the evidentiary hearing on Azurin's habeas corpus petition, Azurin had been ordered deported and was appealing such order.

state custody under his 1990 conviction at the time he filed his petition. The People's contention tracks a similar allegation in their return to Azurin's petition. (*In re Petersen* (1958) 51 Cal.2d 177, 181 [331 P.2d 24, 77 A.L.R.2d 1291]; *In re Wessley W.* (1981) 125 Cal.App.3d 240, 246-247 [181 Cal.Rptr. 401].) The court implicitly rejected the People's allegation in granting Azurin's habeas corpus petition. However, because the court lacked habeas corpus jurisdiction, the order must be reversed.

A

*The Law*

"The writ of habeas corpus was developed under the common law of England ' "as a legal process designed and employed to give summary relief against illegal restraint of personal liberty." ' [Citations.] It continues to serve this purpose today under our law." (*People v. Romero* (1994) 8 Cal.4th 728, 736-737 [35 Cal.Rptr.2d 270, 883 P.2d 388].) "Through a habeas corpus proceeding, a court may grant relief from various forms of constructive custody, as well as from physical restraints." (*Id.* at p. 737, fn. 3.) In that vein, in discussing section 1473, subdivision (a),[3] an appellate court stated: "Although the normal function of the writ of habeas corpus as stated in section 1473 is to provide for those persons physically imprisoned, the decisional law of recent years has expanded the writ's application to persons who are determined to be in constructive custody. Today, the writ is available to one on parole . . . , probation . . . , bail . . . , or a sentenced prisoner released on his own recognizance pending hearing on the merits of his petition. . . . The thrust of these cases is that a person is in custody constructively if he may later lose his liberty and be eventually incarcerated." (*In re Wessley W., supra,* 125 Cal.App.3d at p. 246, citations omitted.)[4]

Federal habeas corpus jurisprudence is similar. Thus, in *Maleng v. Cook* (1989) 490 U.S. 488 [109 S.Ct. 1923, 104 L.Ed.2d 540], in discussing the

---

[3]Section 1473, subdivision (a) provides: "Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."

[4]In *In re Wessley W., supra,* 125 Cal.App.3d 240, the appellate court reversed a trial court order granting habeas corpus to compel the sealing of all arrest and court records related to the habeas petitioner's 1965 conviction. The petitioner had alleged that the listing of the 1965 conviction in his rap sheet constituted the constructive custody necessary for habeas corpus jurisdiction. (*Id.* at pp. 246-247.) However, characterizing the record as "completely devoid of any facts to support the trial court's finding of constructive custody," the appellate court concluded the petitioner was not in actual custody and could not be placed into custody since his probation had been terminated some 15 years earlier. (*Ibid.*)

federal habeas corpus statute giving federal district courts jurisdiction to entertain petitions for habeas corpus "only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States,' " the Supreme Court observed it had "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." (*Id.* at pp. 490-491 [109 S.Ct. at p. 1925].) The Supreme Court also observed that its "interpretation of the 'in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus. . . . [F]or example, we held that a prisoner who had been placed on parole was still 'in custody' under his expired sentence." (*Id.* at p. 491 [109 S.Ct. at p. 1925].) However, the Supreme Court further observed that it had never held that "a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." (*Ibid.*)

B

*Analysis*

In exercising its original habeas corpus jurisdiction granted by the state Constitution, the superior court " 'must abide by the procedures set forth in Penal Code sections 1473 through 1508.' " (*People v. Romero, supra,* 8 Cal.4th at p. 737.) In that vein, section 1477 provides: "The writ must be directed to the person having custody of or restraining the person on whose behalf the application is made, and must command him to have the body of such person before the Court or Judge before whom the writ is returnable, at a time and place therein specified." Azurin's habeas corpus petition alleged he was "unlawfully restrained of his liberty upon deportation proceedings" by the INS. Further, in his respondent's brief, Azurin asserts that after being arrested and placed in custody by the INS, he posted bond.[5] However, the writ granted by the superior court was not directed to the INS and, indeed, could not properly have been so directed. (*Gates v. Municipal Court* (1992)

---

[5]The People contend Azurin did not plead or prove that the INS released him on bail. The People also contend that in the superior court, Azurin did not claim his alleged arrest and bail in the deportation proceedings constituted constructive custody. Further, the portions of the record cited by Azurin do not clearly disclose Azurin's arrest by the INS, his placement in custody by the INS or his posting of bail. However, as acknowledged by the People, Azurin's habeas corpus petition alleged he was "arrested and detained by the INS." As the People also acknowledge, in his denial to the People's return Azurin alleged he was "currently on bail awaiting the result of the INS proceedings." For purposes of analysis and without deciding the issue, we proceed on the theory that Azurin was in the actual or constructive custody of the INS when he filed his habeas corpus petition.

9 Cal.App.4th 45, 53 & fn. 3 [11 Cal.Rptr.2d 439].) Instead, the writ was directed to the People of the State of California. ■ As we shall explain, by not meeting his burden to show that when filing his habeas corpus petition he was in actual or constructive state custody based upon his 1990 conviction, Azurin failed to satisfy the habeas corpus jurisdictional requirements under California law. (§ 1473, subd. (a); *In re Wessley W., supra,* 125 Cal.App.3d at pp. 246-247.)

Although his parole on the 1990 conviction has long since expired (cf. *Allen v. State of Or.* (9th Cir. 1998) 153 F.3d 1046, 1051 ["The State of Oregon has 'extracted its punishment and has no further interest in petitioner' "]), Azurin contends he nonetheless satisfied the jurisdictional requirements for habeas corpus against the People under California statutory and case law. Specifically, Azurin effectively claims that at the time his habeas corpus petition was filed, he was assertedly in constructive state custody under his 1990 conviction because he was in actual or constructive federal custody in INS deportation proceedings that were based solely upon the fact of such 1990 conviction. However, since the sentence imposed for Azurin's 1990 conviction had fully expired before he filed his habeas corpus petition, we decline to expand the interpretation of the language of section 1473, subdivision (a) so as to reach a conclusion that Azurin was in California's "constructive custody" under the 1990 conviction simply because such conviction formed the basis for federal deportation proceedings including attendant federal custody.

Federal law is instructive on the meaning of "constructive custody." In *Maleng v. Cook, supra,* 490 U.S. 488, a case involving use of prior convictions to enhance sentences on subsequent convictions, the Supreme Court faced the question "whether a habeas petitioner remains 'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." (*Id.* at p. 492 [109 S.Ct. at p. 1926].) In giving a negative answer to that question, the Supreme Court stated, "While we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." (*Ibid.*) Further, in noting a different conclusion was not required even though in that case "the possibility of a sentence upon a subsequent conviction being enhanced because of the prior conviction actually materialized," the Supreme Court stated, "When the second sentence is imposed, it is pursuant to the second conviction that the petitioner is incarcerated and is therefore 'in custody.' " (*Id.* at pp. 492-493 [109 S.Ct. at p. 1926].)

Unlike the situation in *Maleng v. Cook, supra,* 490 U.S. 488, Azurin's case does not involve a second sentence. However, although any custody of Azurin under the deportation proceedings was apparently based solely on the "fact" of his 1990 conviction in California (*Contreras v. Schiltgen* (9th Cir. 1997) 122 F.3d 30, 32), during those proceedings Azurin was not "in the custody of the same sovereign responsible for the original conviction," but instead was "in the custody of the INS, an agency of a different sovereign." (*Id.* at p. 33; see *Allen v. State of Or., supra,* 153 F.3d at p. 1051.) Further, such deportation proceedings were simply a "collateral consequence" of Azurin's 1990 conviction. (*Spencer v. Kemna* (1998) 523 U.S. 1, 8-9, 12 [118 S.Ct. 978, 983-984, 985-986, 140 L.Ed.2d 43]; *Fiswick v. United States* (1946) 329 U.S. 211, 222 & fn. 8 [67 S.Ct. 224, 230, 91 L.Ed. 196].)[6] As such, the pendency of those proceedings, without more, did not constitute "custody" in California under such 1990 conviction for purposes of satisfying the habeas corpus jurisdictional requirements of California law. (Cf. *Maleng v. Cook, supra,* at p. 492 [109 S.Ct. at p. 1926] ["once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it"].)

In sum, although the "hazards of deportation" based upon Azurin's 1990 conviction were "real" (*Fiswick v. United States, supra,* 329 U.S. at p. 222 [67 S.Ct. at p. 230]; see *Spencer v. Kemna, supra,* 523 U.S. at p. 9 [118 S.Ct. at pp. 983-984]), Azurin did not meet his burden of proving that his INS deportation proceedings rendered him in the constructive custody of California under such conviction. Hence, since Azurin's habeas corpus petition did not meet the habeas corpus jurisdictional requirements of California law, the superior court erred in granting his petition.

---

[6]"Once the convict's [or a parolee's] sentence has expired, . . . some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if [a challenge to the validity of his conviction] is to be maintained. [Citation.] In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." (*Spencer v. Kemna, supra,* 523 U.S. at pp. 7-8 [118 S.Ct. at p. 983].)

Further, "[i]n the context of criminal conviction, the presumption of significant collateral consequences is likely to comport with reality. . . . [I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' [Citation.]" (*Spencer v. Kemna, supra,* 523 U.S. at p. 12 [118 S.Ct. at p. 985].) "Although deportation is not technically a criminal punishment, it may visit great hardship on the alien" and "may result in the loss 'of all that makes life worth living.' " (*Fiswick v. United States, supra,* 329 U.S. at p. 222, fn. 8 [67 S.Ct. at p. 230].)

## III

### DISPOSITION

The order is reversed.[7]

Nares, J., and Haller, J., concurred.

A petition for a rehearing was denied February 14, 2001, and the opinion was modified to read as printed above. Petitioners' petition for review by the Supreme Court was denied May 2, 2001. Mosk, J., was of the opinion that the petition should be granted.

---

[7]This disposition is without prejudice to Azurin's filing a petition for error *coram nobis* in the superior court. (*People v. Wiedersperg* (1975) 44 Cal.App.3d 550 [118 Cal.Rptr. 755]