[No. B145701. Second Dist., Div. One. Mar. 7, 2001.]

CARLOS FRANCISCO MENDEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Michael P. Judge, Public Defender, Kelly G. Emling, Head Deputy Public Defender, Marie C. Girolamo and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, George M. Palmer, Head Deputy District Attorney, Brentford J. Ferreira and Shirley S. N. Sun, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—*Coram nobis* will not issue to correct a judgment based upon perjured testimony unless the prosecuting authorities or the court knew or had reason to know about the perjury at the time it occurred. The question before us is this: Should we ignore that rule simply because this case is tangentially related to the Rampart scandal? Our answer is "no."

## FACTS

In April 1992, Carlos Francisco Mendez was convicted of a drug offense and placed on probation. In September 1992, he was convicted of another drug offense and once again placed on probation. On May 13, 1993, he was arrested by Los Angeles Police Department Officer David Mack. At Mendez's preliminary hearing, Officer Mack testified that when he saw Mendez on the street on May 13, he recognized him because, the day before, he had purchased $20 worth of rock cocaine from him (but had not arrested him then because he ran off). Mendez was held to answer and an information was filed charging him with one count of selling cocaine base.

At Mendez's arraignment in June, the trial court (Hon. J. Stephen Czuleger) said it was "a good case for a disposition" since Mendez was already on probation in two cases, suggested the new case was "worth four years in state prison," and noted that the prosecutor had nevertheless offered three years. The trial court said it was "a very, very reasonable offer under the

circumstances and [was] in fact the lowest possible term" that Mendez could serve. When the court asked whether Mendez would like "to take advantage of that," Mendez said, "The thing is the case that they have, they are charging me but they have the wrong person. . . . I didn't do any sales." When defense counsel confirmed that her client did not want to accept the offer, the court asked, "Do you understand it may not be available to you in the future and that you are on probation and I am going to run your probation violation hearings first and that on one probation you can get four years and on the other one you can get three years, and I can run them consecutive to each other, and that's aside from the new case that you have?" Mendez responded: "But how are they going to violate my probation if I didn't do anything?"

The court said, "Sir, if you didn't do anything please do not enter any plea at all. I don't want you to plead guilty, but I am just telling you these are the options that you have and that I am going to be hearing the probation violations here, the probation violations first, and that's without a jury, and if the prosecution puts on sufficient evidence that I believe that you violated your probation that before you even handle your new case I may find it necessary to find you in violation of probation and send you to state prison for four years on one of those cases alone. So I just want you to be aware of the down side."

Mendez was arraigned, a hearing on the probation violation was set for July 9, and trial was set for August 2. On July 9, defense counsel reminded the court (Judge Czuleger) about the three-year offer, then explained that Mendez's father had called and persuaded Mendez to accept the offer. The court responded: "My recollection is he not only did not want it, but he had quite a bad attitude about not wanting it." Defense counsel disagreed: "He hasn't had a bad attitude with me, and his parents [came] in and talked to me that day . . . . I notified the District Attorney's office and the clerk of this court on that day that he had wanted to accept the three years. . . . [H]e is willing to accept that and would like to receive a sentence today . . . ."

The court asked Mendez: "[W]hy should I give you the three years? You turned it down before." Mendez said, "No. I was confused." The court said, "Sir, you weren't confused, you had a bad attitude." But the court then added: "If the defendant wants to plead right now I will give him the three years, if not we will go forward with the hearing immediately." Mendez was advised of his rights, which he waived. When asked if anyone had threatened him in any way, he said "no." When asked, "Are you doing this freely and voluntarily because you are in fact guilty," he said "yes," then pled guilty to the new count and admitted the probation violations. Mendez was sentenced to state prison for a term of three years.

In 1999, in federal court, Officer Mack was convicted of a bank robbery charge and sentenced to prison for a term of 14 years, three months. According to Mendez, Officer Mack had also "attempted to contract for a murder, consorted with narcotics dealers, and asserted that he 'renounced' his career as a police officer and that he was a member of the Bloods street gang." In February 2000, in response to claims of corruption in the Rampart Division of the Los Angeles Police Department, the Los Angeles County Public Defender formed a Public Integrity Assurance Task Force to identify cases in which police misconduct might have resulted in a miscarriage of justice so that relief could be sought for those who had been victimized by police malfeasance.

In August 2000, Mendez filed a petition for a writ of habeas corpus (presumably as the result of the Task Force's investigation). The petition alleged that he was innocent and that he had been unlawfully arrested by Officer Mack, and claimed that "[r]elief should be granted [because his] arrest and conviction [were] based solely on the credibility of . . . Officer Mack." In an accompanying declaration signed in El Salvador, Mendez said he had "pled guilty even though [he] was not guilty because of what the judge told [him] would happen on [his] probation cases." The petition was summarily denied without prejudice (Hon. Larry Paul Fidler) on the ground that Mendez was not in actual or constructive custody.

In September, Mendez filed a "motion to vacate judgment or for other appropriate equitable relief" in which he simply incorporated his habeas petition, noted that it had been denied without prejudice, and asked the court to vacate the judgment against him. The People construed Mendez's motion as a petition for a writ of *coram nobis* and, so construed, moved to dismiss it on the grounds (1) that Mendez "had to have been fully aware that there existed false evidence as presented in the police reports and the preliminary hearing and cannot claim this information is newly discovered"; (2) that the petition was "time barred because [Mendez] was not diligent in presenting his claims"; (3) that "coram nobis will not vacate a judgment when the conviction was obtained by the use of false testimony"; and (4) that Mendez had "not alleged with particularity facts that entitle him to relief."

The trial court (Judge Fidler) denied Mendez's motion. Mendez then filed a petition for a writ of mandate in which he asked us to compel the trial court to afford him a hearing and, upon a sufficient showing, to grant whatever equitable relief is appropriate under the circumstances. We issued an order to show cause.

DISCUSSION

A.

██ Since Mendez is not in prison or on probation or parole or otherwise in constructive custody, the remedy of habeas corpus is not available to him—and it is immaterial that lingering noncustodial collateral consequences are still attached to his conviction. (Pen. Code, § 1473, subd. (a); *In re Wessley W.* (1981) 125 Cal.App.3d 240, 246-247 [181 Cal.Rptr. 401]; *Maleng v. Cook* (1989) 490 U.S. 488, 490-492 [109 S.Ct. 1923, 1924-1925, 104 L.Ed.2d 540]; *In re Azurin* (2001) 87 Cal.App.4th 20 [104 Cal.Rptr.2d 284].) Mendez does not seriously contend otherwise.

B.

██ The trial court construed Mendez's motion to vacate as a petition for a writ of error *coram nobis* and, so construed, denied it. Mendez contends this must be wrong. He says there must be some remedy available to him. On the showing he has made, there isn't.

1.

In *People v. Perez* (1908) 9 Cal.App. 265 [98 P. 870], the defendant pled guilty to robbery and was sentenced to state prison. About a year later he filed a petition for a writ of *coram nobis*, alleging that his guilty plea was entered under duress—while incarcerated and awaiting his preliminary hearing, the sheriff had told him that he was in immediate danger of mob violence, and the only way to escape was to plead guilty, in which event he would be immediately moved from the local jail to the state prison. The People presented evidence to the contrary and the trial court denied the petition. The Court of Appeal said *a guilty plea obtained by duress is void and cannot be the basis for a valid judgment*, but affirmed in this case because the trial court was justified in believing, on the evidence before it, that the defendant's plea was entirely voluntary. (*Id.* at pp. 266-267; see also *Alexander v. State* (1912) 20 Wyo. 241 [123 P. 68].)

In *People v. Mooney* (1918) 178 Cal. 525 [174 P. 325], the defendant was convicted of murder based on the testimony of eyewitnesses. His motion for a new trial was denied and the judgment was affirmed on appeal. Later, he filed a petition for a writ of *coram nobis* in which he presented new evidence (previously unknown to him or his lawyers) to show the eyewitness's testimony was false. If true, the new testimony would have impeached the witness's credibility. The petition was denied. The truth or falsity of the

testimony of the eyewitnesses was part of the issue submitted to the jury, and that adjudicated issue cannot later be readjudicated by a writ of *coram nobis*, which lies only where "no trial ha[s] been had, but a plea had been obtained from the defendant by some character of duress, or the trial was affected by some outside force."[1] The remedy in this case was by motion for a new trial, and the fact that the newly discovered evidence was discovered too late did not mean the defendant could bring it before the court " 'under the guise of a motion to vacate the judgment upon the ground of fraud. The defendant in such case is without remedy. [¶] *In this state it is the settled law that a judgment cannot be set aside because it is predicated upon perjured testimony or because material evidence is concealed or suppressed. The fraud which is practiced in such cases upon both the court and him against whom the judgment is pronounced is not such fraud as is extrinsic to the record; and it is only in cases of extrinsic fraud that such relief may be had.'* " (178 Cal. at pp. 529-530, italics added.)

In *People v. Reid* (1924) 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435], the defendant was convicted of murder. His motion for a new trial was denied, his conviction was affirmed on appeal, and a date of execution was set. Later, he filed a petition for a writ of error *coram nobis* attacking certain information given to the jurors during their deliberations. The Supreme Court denied the petition, explaining that the common law remedy of *coram nobis* has generally been supplanted by the statutory motion for a new trial and the statutory right to appeal. In this case, the claimed irregularities occurring in the course of a trial and affecting the verdict were remediable by a motion for a new trial and reviewable upon appeal, and thus could not

---

[1] In *Sanders v. State* (1882) 85 Ind. 318 [1882 WL 6389], cited by our Supreme Court in *Mooney*, the Supreme Court of Indiana approved the use of *coram nobis* where a guilty plea was entered because a mob had threatened violence. "It is almost a mockery to call that a trial, or a judicial hearing, which condemns an accused upon a plea of guilty forced from his reluctant counsel by threats of an angry and excited mob, and interposed because they believed that to proceed with a trial upon a plea of not guilty would result in the hanging of their client by lawless men. . . . In many respects the facts of this case go far beyond that of ordinary cases of duress, for here the officers of the law, judge, sheriffs and jailers were inspired with fear of violence; counsel of age and experience, influenced by the appearances of danger which surrounded their client, secured from him a reluctant acquiescence to the plea of guilty." (*Id.*, 1882 WL 6389, p.* 2.) In *State v. Calhoun* (1893) 50 Kan. 523 [32 P. 38, 40], also cited by our Supreme Court in *Mooney*, the Supreme Court of Kansas said *coram nobis* would lie in the trial court and asked, rhetorically: "Is it possible that a person who, under fear of mob violence and of death or great personal injury, is compelled to plead guilty to a criminal charge, and to be sentenced to imprisonment and hard labor in the penitentiary, is without remedy to restore to him his lost rights? But if he has no remedy then what becomes of the guaranties of our own state constitution?" But in *State v. Asbell* (1900) 62 Kan. 209 [61 P. 690], a mob violence case where the defendant went to trial and was convicted, *coram nobis* relief was denied: "If the common-law remedy invoked can be obtained upon the grounds alleged here, there is little certainty in judicial proceedings, and little finality in the judgment of courts." (*Id.* at p. 691.)

be presented by *coram nobis*—notwithstanding the expiration of the time within which the statutory remedy may be exercised. "Where the legislature has provided a statutory remedy which supplants . . . a corresponding common-law remedy and has appended thereto a statute of limitations different from that which governs the common-law remedy, [the statute must prevail]. To hold [otherwise] would be to hold in effect that in case of conflict between the two the common law prevails over the statute." (*Id.* at pp. 257-258.)

*Reid* makes it clear that, even at common law, the showing before the court would not have justified the writ, which "never issues to correct an error of law nor, so far as we have been able to ascertain, has it ever issued to redress an irregularity occurring at the trial, such as misconduct of the jury, or of the court, or of any officer of the court (except under circumstances amounting to extrinsic fraud which in effect deprived the petitioner of a trial upon the merits)."[2] (*People v. Reid, supra,* 195 Cal. at p. 258; and see *Ernst v. State* (1923) 179 Wis. 646 [192 N.W. 65, 30 A.L.R. 681].)[3] And *Reid* also makes it clear that the "maxim, 'for every wrong there is a remedy' . . . [,] is not to be regarded as affording a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time— even though such failure accrued without fault or negligence on his part." (*People v. Reid, supra,* 195 Cal. at p. 260; see also *In re Dorsey* (1947) 81 Cal.App.2d 584, 586 [184 P.2d 702] [*coram nobis* lies when a defendant has

---

[2]According to the Supreme Court in *Reid,* the cases where the writ has issued or equivalent relief has been afforded are those where the defendant was insane at the time of trial and this fact was unknown to court and counsel; where the defendant was an infant and appeared by an attorney without the appointment of a guardian ad litem; where the defendant was a feme covert and her husband was not joined; where the defendant was a slave and was tried and sentenced as a free man; where the defendant was dead at the time judgment was rendered; where default was entered against a defendant who had not been served with summons and who had no notice of the proceeding; where counsel inadvertently entered an unauthorized appearance in behalf of a defendant who had not been served with process; where a plea of guilty was extorted through fear of mob violence; where defendants and their counsel were induced by false representations to remain away from the trial under circumstances amounting to *extrinsic* fraud; and where by the failure of the clerk to properly file an answer the party was deprived of his defense. (*People v. Reid, supra,* 195 Cal. at p. 255.)

[3]In *Ernst v. State, supra,* 192 N.W. 65, a defendant who did not speak English was fraudulently induced to plead guilty to a charged crime, not knowing the meaning or tenor of his plea. (*Id.* at p. 67.) The Wisconsin Supreme Court said the defendant's remedy was a petition for *coram nobis* brought in the trial court, explaining that the "effect of this fraud, assuming it to have been practiced, is to leave the information without a plea, and the entry of a plea in every instance under our statutes is a necessary prerequisite to a judgment and sentence. This being so, no statutes of limitations apply, and no statutes exist in this state which would bar the [defendant] from taking advantage of the alleged fraud. Under the above assumption of the truth of the petition, it cannot be claimed that the [defendant] was ever in jeopardy, no issue in contemplation of law having ever been formed, and no valid judgment or sentence having been pronounced or imposed." (*Ibid.*)

been fraudulently coerced or persuaded to plead guilty, or is deprived of the right of trial by extrinsic fraud, deceit, duress, persuasion or misrepresentation, when no statutory remedy for the wrong exists, or when the statutory remedy is inadequate].)

In *People v. Adamson* (1949) 34 Cal.2d 320 [210 P.2d 13], one of the grounds alleged on a petition for *coram nobis* was that the defendant was convicted upon the false testimony of fingerprint experts used by the People with knowledge of its falsity. (*Id.* at p. 325.) ■ The trial court denied the petition and the Supreme Court affirmed, confirming the narrow scope of a motion to vacate a judgment in the nature of a petition for *coram nobis*. "With expansion of the function of habeas corpus in this state, an application for that writ has become the proper remedy to attack collaterally a judgment of conviction which has been obtained in violation of fundamental constitutional rights. Thus, *the appropriate writ to secure relief from a judgment of conviction obtained by the use of false testimony known by the prosecution to be false is not coram nobis but habeas corpus [citations], although coram nobis has been used for this purpose [citations]. . . . [¶] . . . [¶]* As to [the defendant's] contention that the State knowingly used perjured testimony, not only does defendant present it in this inappropriate proceeding, but he does not comply with the requirement that he show that he has exercised due diligence. . . ." (*Id.* at pp. 327-328.)

In *People v. Grgurevich* (1957) 153 Cal.App.2d 806 [315 P.2d 391], Division Two of our District held that, because a postjudgment motion to set aside a plea of guilty is the equivalent of an application for a writ of *coram nobis, the defendant must proceed as one who is at least prima facie guilty; as the attacker, he has the burden of producing " 'convincing proof of a fact which constitutes a legal ground for setting aside the judgment. The presumption that the judgment is valid in all respects is strong; the interests of justice and of humanity require that its terms be executed promptly if it be not set aside.' . . . A defendant's plea of guilty 'is an admission of every element of the offense charged, and constitutes a conclusive admission of defendant's guilt.' "* (*Id.* at pp. 810-811, italics added; see also *People v. Vaitonis* (1962) 200 Cal.App.2d 156, 160 [19 Cal.Rptr. 54] [evidence insufficient for *coram nobis* where the defendant claimed he was "tricked and coerced" into a guilty plea but did not state who coerced him]; *People v. O'Neal* (1962) 204 Cal.App.2d 707, 708-709 [22 Cal.Rptr. 641] [claim that the police had assured the defendant he would receive a county jail sentence rejected because the "exceptional remedy to set aside a judgment exists only where a strong and convincing showing of the deprivation of rights by extrinsic causes is made"].)

In *People v. Shipman* (1965) 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993], the defendant pled guilty to two counts of assault. He was sentenced to state

prison with a recommendation for psychiatric care. He did not appeal. About a year later, the defendant, in propria persona, filed a petition for a writ of *coram nobis* in which he claimed he was insane at the time of the offenses and at the time of his plea. ■ The Supreme Court said he was entitled to appointed counsel, explaining that the "writ of coram nobis is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' . . . (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; *issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.*' . . . This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. . . . (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' " (*Id.* at pp. 230-231, italics added.)

In *People v. Williams* (1965) 238 Cal.App.2d 585 [48 Cal.Rptr. 67], the defendant was convicted of robbery. Several years later, he filed a petition for a writ of *coram nobis* in which he claimed the police had coerced testimony from the purported victim, Fred Scott. The defendant first became aware of this when he met Scott at Folsom Prison and was told by Scott that the police had threatened to prosecute him if he did not testify against the defendant. The trial court denied the petition and the Court of Appeal affirmed. The discovery and proof that perjury was committed at the trial does not "justify issuance of the writ. *The falsity of the testimony, if a fact, presumably generally is known to the defendant at the time of trial in most instances. To permit reopening would merely result in again retrying the issue of fact resolved in the original proceeding.*" (*Id.* at p. 592, italics added.)

"*On the other hand, where a conviction has been obtained by the use of perjured testimony, used with knowledge of its falsity by the prosecuting authorities, it would be a violation of due process of law for a state to fail to provide any postconviction corrective judicial process by which a conviction so obtained might be set aside where these facts are only discovered after the judgment has otherwise become final.* . . . Review of such a question is available through petition for writ of habeas corpus. . . . The question remains whether that writ furnishes the exclusive remedy, or whether the question can be reviewed in connection with a petition such as that filed in the lower court . . . .

"In *People* v. *Mooney*[, *supra*,] 178 Cal. 525[, the Supreme Court] recognize[d] the proceedings below as an application for a writ of error *coram*

*nobis,* and concluded that the creation and existence of the statutory remedies of motion for a new trial and appeal rendered that writ unavailable in cases where a trial had been had on the factual issue under attack. . . . [¶] In *People* v. *Adamson, supra,* 34 Cal.2d 320, [the Supreme Court held that habeas corpus, not *coram nobis,* was the appropriate remedy when the defendant claimed the State had knowingly used perjured testimony, but the Court did not expressly say that habeas was the exclusive remedy]. . . . [¶] . . . [¶]

"Defendant seeks a determination that relief on the grounds under discussion should be available under both *coram nobis* and habeas corpus. He contends that the circumstances satisfy the requirements of [*People v. Shipman, supra,* 62 Cal.2d 226 [42 Cal.Rptr. 1, 397 P.2d 993]] in that (1) the fact that the victim's false testimony was coerced by the prosecution was unknown to him, and no fault or negligence on his part prevented presenting that fact at the trial; (2) that although the falsity of the victim's testimony goes to the merits of the issues tried and should have been known to him at the time of trial, the fact that it was coerced is a new fact and new issue which would defeat his conviction, and the incidental result that it opens up an issue already found against him should not defeat resort to this writ; and (3) the fact of coercion was not known to him at the time of the trial and could not have been discovered by him earlier than it was. [¶] . . . [¶] Despite the[] considerations [favoring *coram nobis*], it is concluded that to avoid the risk of creating greater uncertainty, the holding of *Mooney* . . . and the dictum of *Adamson* and the cases following it should be followed until expressly overruled by higher authority. The defendant has his remedy for review of the grounds asserted through petition for habeas corpus." (*People v. Williams, supra,* 238 Cal.App.2d at pp. 593-598, italics added.)

## 2.

Mendez claims his petition is "of immense importance" to hundreds of people "victimized in the ongoing Rampart scandal." He says the question "is whether the judiciary will provide any relief to a person convicted of a crime as the result of governmental misconduct when proof of that perfidy does not come to light until after the person has completed all <u>formal</u> forms of custody" but remains subject to many "serious and continuing collateral consequences." The short answer is that he has no remedy because he has not presented evidence sufficient to show that his guilty plea was the result of "governmental misconduct." Mendez has not shown (other than by his own denials) that Officer Mack in fact lied about Mendez's involvement in a drug deal. He has not shown (or even alleged) that the prosecuting authorities or the court knew or had reason to know in 1993 that Officer

Mack's credibility was suspect. On the record presented, Mendez is indeed without a remedy. (But see *People v. Williams, supra,* 238 Cal.App.2d at pp. 593-598; *People v. Adamson, supra,* 34 Cal.2d at pp. 327-328; *Sanders v. State, supra,* 85 Ind. 318; *State v. Calhoun, supra,* 32 P. 38.)

Implicit in Mendez's petition is a request to us to presume he pled guilty because he knew a jury would accept Officer Mack's allegedly perjured testimony and reject the testimony of a defendant who had twice before been convicted of drug charges. From Mendez's perspective, we would then presume that, had he known the truth about Officer Mack, he would not have pled guilty but would instead have gone to trial—where he would have been acquitted because he would have impeached Officer Mack with evidence of the Rampart scandal. That's not the way it works. Because Mendez's guilty plea was an admission of every element of the charged offense, he is at least prima facie guilty. As a result, the presumption is that the judgment is correct, not the other way around, and it is Mendez's burden to present convincing proof of some fact that would establish a legal ground for setting aside the judgment. (*People v. Grgurevich, supra,* 153 Cal.App.2d at pp. 810-811; *People v. O'Neal, supra,* 204 Cal.App.2d at p. 709.) He has not done that.

It is settled in California that, absent extrinsic fraud or duress, a judgment predicated on perjured testimony or entered because evidence was concealed or suppressed cannot be attacked by a petition for a writ of *coram nobis.* (*People v. Mooney, supra,* 178 Cal. at pp. 529-530; *People v. Ibanez* (1999) 76 Cal.App.4th 537, 544 [90 Cal.Rptr.2d 536] [*coram nobis* will issue based upon newly discovered evidence only where the new evidence does *not* go to the merits of the issues of fact determined at trial]; *People v. Perez, supra,* 9 Cal.App. at pp. 266-267; *People v. Williams, supra,* 238 Cal.App.2d at pp. 591-592; *Ernst v. State, supra,* 192 N.W. at pp. 66-67.) In the eyes of the law, Mendez's rights were adequately protected—by his right to proceed to trial, where he could have attacked Officer Mack's credibility to the extent he could, by his right to move for a new trial, and by his right to appeal. (*People v. Reid, supra,* 195 Cal. at pp. 257-258.) That the time within which he could have availed himself of those remedies has come and gone is legally immaterial. (*People v. Mooney, supra,* 178 Cal. at pp. 529-530 [when evidence is discovered too late, the defendant is without a remedy]; *People v. Reid, supra,* 195 Cal. at pp. 257-258, 260 [the maxim, "for every wrong there is a remedy" is not to be construed to afford a second remedy to a party who by the passage of time has failed to invoke a remedy that was available, "even though such failure accrued without fault or negligence on his part"].)

It is at the time of trial that a party "must be prepared to meet and expose perjury then and there. . . . The trial is his opportunity for making the truth

appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise [forgoes or is unable to challenge the outcome or] show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy. The wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, [could] be worse than occasional miscarriages of justice." (*Pico v. Cohn* (1891) 91 Cal. 129, 134 [27 P. 537].) For those who remain in custody, habeas is available. For those who are free, *coram nobis* is not the answer.

If the degree of the wrong done to Mendez is worse than appears on the record presented, his remedy (as noted by the trial court) is to apply to the Governor for a pardon. It is not up to us (as Mendez's lawyer suggested at oral argument) to create an abstract "equitable remedy" that in practical effect would be a roundabout way to issue a writ of *coram nobis* under circumstances where that writ will not issue.

DISPOSITION

The petition is denied.

Spencer, P. J., concurred.

**MALLANO, J.,** Concurring.—I agree the petition should be denied.

A writ of habeas corpus does not lie because Mendez is no longer in prison or subject to parole supervision. (*In re Azurin* (2001) 87 Cal.App.4th 20 [104 Cal.Rptr.2d 284].) And petitioner conceded at oral argument that a writ of *coram nobis* is not available to him on the facts presented.

Rather, petitioner asks us to fashion an unprecedented remedy for him "pursuant to the broad equitable powers of the court." In his petition, he states: "Petitioner was arrested on May 13, 1993, by Los Angeles Police Officer David Mack. In brief, Mack, who worked with the notorious Rafael Perez, subsequently committed a bank robbery, attempted to contract for a murder, consorted with narcotics dealers, and asserted that he 'renounced' his career as a police officer and that he was a member of the Bloods street gang. [¶] Mack was arrested December 16, 1997. Mack entered a guilty plea to bank robbery in federal court, and on September 13, 1999, was sentenced to serve a term of 14 years, 3 months."

Because petitioner has failed to demonstrate how his guilty plea—entered over four years before Mack's criminality came to light—was tainted, I

agree that we should not forge a novel remedy for petitioner. But I do not foreclose the possibility that we might employ our broad equitable powers to provide relief to some future petitioner.

A petition for a rehearing was denied March 26, 2001, and on April 4, 2001, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied May 23, 2001.