59 Cal.Rptr.3d 255 (2007)
150 Cal.App.4th 1158
The PEOPLE, Plaintiff and Appellant,
v.
Hyung Joon KIM, Defendant and Respondent.
No. H029324.
Court of Appeal of California, Sixth District.
April 25, 2007.
*257 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Amy Haddix, Deputy Attorney General, for Plaintiff/Appellant: The People.
Law Offices of Norton Tooby, Norton Tooby, Oakland, AJ Kutchins, Berkeley, Law Offices of Joel Franklin, Joel Franklin, Monterey, for Defendant/Respondent: Hyung Joon Kim.
*256 PREMO, J.
Defendant Hyung Joon Kim filed a petition for writ of error coram nobis asserting that a judgment of conviction against *258 him for felony petty theft with a prior following a Negotiated plea was based on mistake of fact and therefore void. He argued that he did not know that the plea would subject him to deportation and concluded that the plea was not knowing and voluntary as required by the federal and state Constitutions. He also filed a nonstatutory motion to vacate the judgment asserting that his trial counsel was constitutionally ineffective because counsel failed to advise him of the immigration consequences of the petty theft conviction. The trial court granted the petition and motion. The People appeal and principally contend that the trial court had no authority to grant the relief defendant sought. We agree and therefore reverse the orders.

BACKGROUND
Defendant was born in South Korea and entered the United States in 1984 on a family visa when he was six years old. He achieved lawful-permanent-resident status in 1986. At some point, he became a ward of the juvenile court because he possessed ammunition. He turned 18 years old in 1995.
In 1996 while on juvenile probation, defendant burglarized a residence in Monterey County and suffered a conviction for first degree burglary following a court trial. The trial court suspended imposition of sentence and placed defendant on five years probation with a condition that he serve 180 days in jail. We affirmed the judgment. (People v. Kim (Oct. 30, 1997, H016002) [nonpub. opn.].)[1]
In 1997, defendant burglarized a Costco in Monterey County and faced the underlying charges in this case of commercial burglary (Costco), petty theft (Costco merchandise) with a prior (residential burglary), and contributing to the delinquency of a minor (an accomplice to the Costco burglary and theft). He also faced a strike allegation from the residential-burglary conviction for purposes of the Three Strikes law. He negotiated a guilty plea to a felony petty theft with a prior and an admission of the strike allegation in exchange for dismissal of the commercial burglary and contributing counts. He signed a waiver form stating the following: "I understand that if I am not a citizen of the United States a plea of `Guilty/'No Contest' could, result in deportation, exclusion from admission to this country, and/or denial of naturalization." Thereafter, the trial court dismissed the strike admission upon defendant's motion and revoked defendant's probation in the residential burglary case. It then sentenced defendant to serve three years in prison for the petty theft conviction plus two concurrent years for the residential burglary conviction.
In 1998, the Immigration and Naturalization Service (INS)[2] charged defendant with mandatory deportation as an aggravated felon because he had suffered a sentence *259 of one year or more (as to defendant, two sentences).[3]
In 1999, defendant was released from prison on three-year parole and placed in INS custody.[4] The INS then began the aggravated-felony deportation proceeding.
In 2002, defendant's parole ended and the INS additionally charged him with discretionary deportation for having suffered two convictions of crimes that involved moral turpitude (residential burglary; petty theft with a prior).[5]
In 2003, defendant filed a nonstatutory motion to vacate the three-year petty-theft sentence and the two-year concurrent residential-burglary sentence on the ground that he did not know that the sentences would subject him to mandatory deportation. The People did not oppose the motion.[6] The trial court granted the motion, vacated the sentences, and ordered nunc pro tunc that defendant be placed on one-day probation with a condition that he serve 364 days in jail and a credit for having served that time.[7] The INS then *260 dismissed the aggravated-felony charge.
In 2003,' the immigration judge found for defendant on the moral-turpitude charge and cancelled deportation.[8]
In 2004, on the government's appeal, the Board of Immigration Appeals reversed the immigration judge and ordered defendant deported to South Korea. Defendant then filed a petition for writ of habeas corpus in United States District Court challenging the deportation order. A change of law resulted in the petition being transferred to the United States Court of Appeals where it is pending.
In 2005, defendant filed the petition[9] and motion at issue.
In support of the petition, defendant submitted a declaration of his trial counsel in which counsel essentially declares that he was not aware that petty theft with a prior would be a moral-turpitude deportation trigger and that, had he known, he would have negotiated a plea to the commercial burglary count, provided that the count charged entry with intent to commit "`theft or any felony,'" a count having the same punishment as petty theft with a prior but without having the moral-turpitude deportation consequences. Defendant also submitted a declaration from an immigration attorney (who had represented defendant in the sentence-vacation proceeding), that explained the immigration consequences resulting from convictions of aggravated felonies and crimes of moral turpitude. The attorney related the following: (1) "We originally sought to vacate the two-year [sic] sentences on two Monterey County cases, including this one, since these sentences made the convictions both aggravated felonies, under immigration law, which trigger the worst of all possible immigration consequences. We assumed that once [defendant] no longer had any aggravated felony convictions, we would be able to avoid deportation for him by obtaining cancellation of removal in immigration court"; (2) "I understand that original defense counsel as well as the prosecution, the court, and [defendant] *261 himself, were unaware at the time of the original plea and sentence in this case of the aggravated felony mandatory deportation consequences of the prison sentence originally imposed. As a result of this mistake of fact, this Court in 2003 vacated the sentence and imposed a sentence of 364 days in county jail, thus avoiding the aggravated felony immigration consequences of the sentence"; (3) "Even if defense counsel had recognized, and avoided, the `aggravated felony' consequences triggered by a one-year sentence, the plea itself, regardless of the sentence, triggered [immigration consequences].... If I had been consulted at the time of the plea, I would have urged [defendant] and his counsel to seek an alternative disposition that avoided not only the aggravated felony sentence, but also avoided the crime of moral turpitude immigration consequences"; and (4) "The Solution. If [defendant] had entered a plea to one count of burglary, ..., entry with intent to commit `theft or any felony,' that conviction would not have been considered a crime of moral turpitude by the immigration authorities." The immigration attorney also opined that defendant's deportation would likely be permanent and South Korea would likely imprison defendant for three to eight years because defendant would refuse military service due to his religious beliefs. Defendant further submitted his father's declaration, which essentially, testified to defendant's good character. And defendant finally submitted his own declaration, which essentially testified to his remorse for past offenses, law abiding behavior for eight years, strong family ties in this country, good standing at San Jose State University, community service, sincere religious beliefs that might subject him to imprisonment in South Korea, and unawareness at the time of his plea that a petty theft with a prior conviction would subject him to deportation while a plea to commercial burglary charging entry with intent to commit "theft or any felony" would not have subjected him to deportation.
In support of the motion to vacate, defendant submitted a declaration of his trial counsel that was identical to the one submitted in support of the petition.
The People opposed the petition and motion by arguing that the trial court had no authority to grant the relief and submitting, on the merits, a declaration from the prosecutor who negotiated the petty-theft plea to the effect that he would not have agreed to assist defendant in thwarting immigration consequences, particularly since defendant would have required an amendment of the information.[10] At the *262 hearing, the People also made the point that, had, defendant negotiated a plea to* commercial burglary instead of petty theft with a prior, he would nevertheless have been subject to mandatory deportation as an aggravated felon because of the three-year prison sentence.
The trial court explained its ruling as follows: "First of all, in regard to the nonstatutory motion, the court feels that the Courtthe Court believes the Court has jurisdiction to entertain the motion because of the Constitutional issues presented. Thethe issue of the ineffective assistance of counsel is somewhat difficult in the sensein my mind in the sense that what the real standard was back when this plea was taken and what the standard perhaps ought to have been may not have been the same. So certainly from the defendant's point of view, the counsel he got was ineffective because it has put him in the position he's now in. [¶] But I suspect that the mistakes that were made were mistakes that were being made pretty generally in the legal community at the time. So it's kind of a bit of a puzzle from that point of view. [¶] For the record, however, the Court does find thatand based in no small part on [trial counsel's] own declaration in that regardthat given the facts presented in this case, the fact that the defendant is a Korean, that was known at the time. It was clear that there was some belief that there wasthere were ties to Korea and even some possibility of him leaving the country for Korea, that immigration should have probably been an issue. [¶] As to the prejudice, based on my 30-plus years of experience in this business, I believe it's not only reasonably possible but frankly highly likely that had [trial counsel] realized what the situation was, he would have been able to find a way to avoid the immigration consequences of ultimately the defendant's conduct. I base that in part on actually Judge Curtis's remarks at the time of sentencing, which were actually provided by the District Attorney's office, wherein he actually demonstrates some sympathy for and some optimism for the defendant's future in striking the strike. Incidentally, ultimately that optimism has apparently been borne out if you look at where [defendant] finds himself today in terms of his change in his lifestyle and his maturity perhaps. [¶] So the Court does find that there is prejudice, given the facts and circumstances of this particular case, and that it's likely [trial counsel] would have had an opportunity to prevail on either or probably both the District Attorney's Office and Judge Curtis in part in arriving at a disposition that would havewould not have incurred the consequences that [defendant] faces at this time. [¶] As to the coram nobis motion, simply I don't know if it's necessary for the Court to even rule on that at this point, but for the sake of the record, the CourtI must say I'm a lot less sanguine about the distinctions between a mistake of fact and mistake of law and how you categorize those. But so the record is clear, the Court grants that motion as well on the grounds that there was a mistake in fact which materially affected the result."

PETITION FOR WRIT OF ERROR CORAM NOBIS
A petition for writ of error coram nobis is a type of motion to vacate the judgment, and "[f]or better or worse, the *263 terms ... are often used interchangeably and the two procedures are similar in scope and effect." (People v. Gallardo (2000) 77 Cal.App.4th 971, 982, 92 Cal. Rptr.2d 161.) A petition for writ of error coram nobis is generally used to bring factual errors or omissions to the court's attention. "A writ of error coram nobis may be granted when three requirements are met: (1) petitioner has shown that some fact existed which, without fault of his own, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of judgment; (2) petitioner has shown that the newly discovered evidence does not go to the merits of the issues tried; and (3) petitioner has shown that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ." (People v. Wiedersperg (1975) 44 Cal.App.3d 550, 554, 118 Cal.Rptr. 755.)
Defendant's position is that he has properly presented in his petition the assertion of his "lack of knowledge of a critical fact"that being the immigration consequences of the petty-theft plea which justifies relief in the coram nobis proceeding. We disagree.
Defendant was properly advised by the trial court of the potential consequences of deportation before he entered his plea.[11] The essence of his claim is that his trial counsel failed to provide him with the additional specific admonition that a conviction for petty theft with a prior would trigger deportation.
But the asserted lack of a proper admonition by counsel does not constitute any new evidence or fact that was not presented to the court. The basis for defendant's petition is therefore a mistake of law attributed to his trial counsel. (See People v. Ibanez (1999) 76 Cal.App.4th 537, 545, 90 Cal.Rptr.2d 536 (Ibanez).) Such a claim is fundamentally one of ineffective assistance of counsel. (See, e.g., People v. Gutierrez (2003) 106 Cal.App.4th 169, 176, 130 Cal.Rptr.2d 429 [claim was, at best, a disguised claim of ineffective assistance of counsel].)
"It is well established that coram nobis does not lie for a claim of ineffective assistance of counsel." (People v. Miranda (2004) 123 Cal.App.4th 1124, 1132, fn. 6, 20 Cal.Rptr.3d 610.) "Coram nobis will not issue to vacate a plea of guilty solely on the ground that it was induced by misstatements of counsel [citation] or where the claim is that the defendant did not receive effective assistance from counsel." (People v. Gallardo, supra, 77 Cal.App.4th 971, 982-983, 92 Cal. Rptr.2d 161.) The appropriate means of raising a legal error in the nature of "ineffective assistance of counsel is either by direct appeal or by petition for a writ of *264 habeas corpus." (People v. Soriano (1987) 194 Cal.App.3d 1470, 1477, 240 Cal.Rptr. 328.)[12]
Ibanez is analogous. There, the defendant alleged that the "`fact unknown to the court at the time of [his] guilty plea was* that [he] did not know he faced the potential of civil commitment under the SVPA.'" (Ibanez, supra, 76 Cal.App.4th at pp. 545-546, 90 Cal.Rptr.2d 536.) The court concluded: "Defendant mischaracterizes what constituted the previously unknown fact in this case. The error in this case did not involve facts or evidence but instead concerned a legal issue. Defendant's ignorance regarding the potential for civil commitment under the SVPA is a legal, not a factual, question." (Id. at p. 546, 90 Cal.Rptr.2d 536.)
Here, defendant was aware of his status and general deportation risk. Any failure to recognize the specific immigration consequences of the plea is an error of law. (Ibanez, supra, 76 Cal.App.4th at p. 547, 90 Cal.Rptr.2d 536.)
Defendant nevertheless relies on Wiedersperg, a case in which the defendant claimed that he, his counsel, and the trial court were ignorant of his status as a resident alien rather than a citizen when he entered his plea.
In Wiedersperg, the petitioner was deported and brought a coram nobis petition to vacate his expunged conviction upon a *265 "slow plea" for marijuana possession. His attorney declared that he was unaware that the petitioner was born in Austria and had entered the United States illegally as a child, and if he had known, he would have negotiated a different disposition that involved a guilty plea to a non-deportable offense. He also declared that based on the court's lenient treatment of petitioner, he believed the court would not have rendered the same judgment if the judge had known the consequences to the petitioner. Finally, both petitioner and his attorney disclaimed knowledge of the possibility of deportation until hearings were begun. On appeal from denial of the coram nobis petition, the Court of Appeal reversed the trial court's order, holding that the petition had stated facts which, if proved, could support the relief requested.
Subsequent cases have distinguished Wiedersperg, limiting its application to situations where the fact of petitioner's illegal status, rather than the immigration consequences of that status, are unknown to the petitioner and his attorney. (See, e.g., Ibanez, supra, 76 Cal.App.4th at pp. 544-545, 90 Cal.Rptr.2d 536.) Thus, the "extremely limited" holding of Wiedersperg does not offer defendant any support for his request for coram nobis relief. (Ibanez, supra, at p. 547, 90 Cal.Rptr.2d 536; People v. Soriano, supra, 194 Cal.App.3d at pp. 1474-1475, 240 Cal.Rptr. 328.) In short, the "coram nobis petition cannot be used to correct legal error." (Ibanez, supra, at p. 547, 90 Cal.Rptr.2d 536.)
Defendant insists that Azurin supports the view that coram, nobis is available to raise an ineffective assistance of counsel claim when, as here, the traditional remedy of habeas corpus is unavailable because the petitioner is not in custody. We disagree.
In Azurin, the court determined that a person who alleged that, as a result of his guilty plea, he was "`unlawfully restrained of his liberty upon deportation proceedings' " by the INS, but who was no longer in actual or constructive custody of the state, "did not meet the habeas corpus jurisdictional requirements of California law." (Azurin, supra, 87 Cal.App.4th at pp. 24 & 26,104 Cal.Rptr.2d 284.)
The petitioner in Azurin, like defendant here, was a lawful permanent resident of the United States. In 1990, he pleaded guilty to discharging a firearm at an occupied vehicle. At that time, he was not advised by counsel that deportation proceedings would likely be initiated against him as a result of his plea. He served a term in the California Youth Authority, successfully completed parole, and was released from actual state custody. In 1998, the INS instituted deportation proceedings against him based on the 1990 conviction. The petitioner then filed a petition for writ of habeas corpus in the superior court asserting that he was in constructive state custody because he was in actual or constructive federal INS custody. The superior court held an evidentiary hearing, granted relief, and permitted the petitioner to withdraw his plea after finding that "defense counsel had rendered ineffective assistance at plea negotiations in this case in 1990 by not advising [the petitioner] of the immigration consequences of his guilty plea." (Azurin, supra, 87 Cal.App.4th at p. 22, 104 Cal.Rptr.2d 284.) The People appealed. The appellate court reversed, finding that "the writ granted by the superior court was not directed to the INS and, indeed, could not properly have been so directed." (Id. at p. 24, 104 Cal.Rptr.2d 284.) The court held that the petitioner was not entitled to relief on habeas corpus because he had "failed to satisfy the habeas corpus jurisdictional requirements under California law." (Id. at p. 25, 104 Cal.Rptr.2d 284.) However, in a final foot-note, *266 the court stated, "This disposition is without prejudice to [petitioner] filing a petition for error coram nobis in the superior court," and cited Wiedersperg. (Id. at p. 27, fn. 7,118 Cal.Rptr. 755.)
Defendant implicitly urges that footnote 7 either applies to him directly or states that Wiedersperg applies to him.
But footnote 7 does not state that the petitioner's ineffective assistance of counsel claim was reviewable on coram nobis; at best, its language suggests that if the petitioner had claims that were cognizable on coram nobis, the court did not intend by its denial of his habeas petition to prejudice those claims. We cannot agree that the Azurin court intended by its footnote to sanction the wholesale rejection of the long-standing rule that ineffective assistance of counsel claims are not reviewable by way of coram nobis petition. We view Azurin's footnote 7 as a recognition that coram nobis is a judicially created extraordinary remedy (People v. Miller (1963) 219 Cal.App.2d 124, 126, 32 Cal.Rptr. 660, disapproved of on other grounds in People v. Skipman (1965) 62 Cal.2d 226, 232-233, 42 Cal.Rptr. 1, 397 P.2d 993), and as such may give a trial judge more leeway to act than does the statutorily circumscribed writ of habeas corpus. (See People v. Superior Court (Giron) (1974) 11 Cal.3d 793, 797, fn. 5, 114 Cal.Rptr. 596, 523 P.2d 636 [coram nobis gives the trial court, even after judgment "`the opportunity to exercise a sound discretion so that justice may be done'"].) It is not, however, authority for the proposition that where the petitioner is in INS custody solely on account of a guilty plea and there is a colorable claim that he would not have entered that plea but for his attorney's misadvisement about the immigration consequences of the plea, he has stated a case for coram nobis relief.
Considering the policy reasons for and against recognition of such an exception to the general rule barring coram nobis review of ineffective assistance of counsel claims, we are convinced that sound policy requires us to adhere to longstanding precedent. "The petition for writ of error coram nobis is opposed by a strong presumption that the judgment of conviction was correct [citations], and the trial judge is required to weigh a [petitioner's] statements contained in [the] petition against this presumption." (People v. Crouch (1968) 267 Cal.App.2d 64, 67, 72 Cal.Rptr. 635.) While one might agree that it is good policy to afford post-conviction relief beyond the custody limitations of habeas corpus to an immigrant who enters a plea of guilty without having been properly advised of the specific immigration consequences of the plea, we think that such relief should come from the Legislature. We find support for this view in Azurin. There, the court "decline[d] to expand the interpretation of the language of [Penal Code] section 1473, subdivision (a) so as to reach a conclusion that [the petitioner] was in California's `constructive custody'" for the purpose of granting him post conviction relief. (Azurin, supra, 87 Cal.App.4th at p. 25, 104 Cal.Rptr.2d 284.) We likewise decline to read Azurin's footnote 7 as an exception to the rule that, ineffective assistance of counsel claims are not properly raised by writ of error coram nobis.
Defendant urges that People v. Superior Court (Giron), supra, 11 Cal.3d 793, 114 Cal.Rptr. 596, 523 P.2d 636, supports the notion that a coram nobis petition is a proper vehicle for vacating a plea that has proved to have unforeseen immigration consequences where no other remedy exists. But, in Giron, the defendant had pleaded guilty and the court had suspended imposition of sentence and granted probation. (Id. at p. 795, 114 Cal.Rptr. 596, *267 523 P.2d 636.) The court determined that the defendant's motion to withdraw his plea, on the ground that he had been unaware that his plea would subject him to deportation, was "governed by Penal Code section 1018, which provides that a guilty plea may be withdrawn before judgment and for good cause shown." (Id. at p. 796, 114 Cal.Rptr. 596, 523 P.2d 636, fn. omitted.) The court stated: "Although such an order granting probation is `deemed to be a final judgment' for the limited purpose of taking an appeal therefrom [citation], it does not have the effect of a judgment for other purposes. [Citations.] As expressly provided in such an order, the criminal proceedings have been `suspended' prior to the imposition of judgment and pending further order of the court." (Ibid.)
Here, however, defendant's claim comes eight years after judgment and is not authorized by any statute.
We note that our Legislature has heeded the call for relief when it has concluded that policy considerations favor relaxation of rules that would otherwise bar relief of meritorious claims. For example, enactment of Penal Code section 1016.5 was the legislative response to Giron. (See Ostroff, Are Immigration Consequences of a Criminal Conviction Still Collateral? How the California Supreme Court's Decision In re Resendiz Leaves This Question Unanswered (2003) 32 Sw.U. L.Rev. 359, 367-368.) Similarly, the Legislature enacted Penal Code section 1473.6 to address the so-called Rampart scandal where certain Los Angeles Police Department officers had engaged in misconduct. Because the misconduct was discovered many years after it occurred, those who were no longer in custody at the time of the discovery of the misconduct would not have been able to set aside their convictions. The statute provides a habeas corpus-like remedy without the requirement of state custody. (See People v. Germany (2005) 133 Cal. App.4th 784, 789-792, 35 Cal.Rptr.3d 110.)
We conclude that defendant "did not meet the first prong" of the requirements for coram nobis relief, "the showing of a previously unknown fact." (Ibanez, supra, 76 Cal.App.4th 537, 549, 90 Cal.Rptr.2d 536.) To the extent that defendant's claim is fundamentally one asserting ineffective assistance of counsel, the claim is not cognizable via coram nobis.

NONSTATUTORY MOTION TO VACATE
A nonstatutory motion to vacate a judgment is considered the equivalent of a petition for writ of error coram nobis. (People v. Miranda, supra, 123 Cal. App.4th 1124, 1132, fn. 6, 20 Cal.Rptr.3d 610; People v. Carty (2003) 110 Cal. App.4th 1518, 1523, 1526-1527, 2 Cal. Rptr.3d 851 (Carty); see People v. Totari (2002) 28 Cal.4th 876, 885-886 & fn. 4, 123 Cal.Rptr.2d 76, 50 P.3d 781, (Totari).)
Defendant nevertheless argues that his motion was something different from a coram nobis petitionsomething that allows him to challenge the judgment based on ineffective assistance of counsel. He principally relies on Murgia v. Municipal Court (1975) 15 Cal.3d 286, 124 Cal. Rptr. 204, 540 P.2d 44 (Murgia), and People v. Fosselman (1983) 33 Cal.3d 572, 582, 189 Cal.Rptr. 855, 659 P.2d 1144 (Fosselman). This reliance is erroneous.
In Murgia, the defendants challenged their prosecution as motivated by invidious discrimination against members of the United Farm Workers Union. They brought pretrial motions to dismiss the charges on the grounds that the prosecution violated their constitutional right to equal protection of the law. In commenting on the motion to dismiss, the Supreme Court stated, "we believe the issue should *268 not be resolved upon evidence submitted at trial, but instead should be raised, as defendants have done here, through a pretrial motion to dismiss. Although no clear California statutory authority provides for such a pretrial motion to dismiss, we have no doubt in light of the constitutional nature of the issue as to the trial court's authority to entertain such a claim." (Murgia, supra, 15 Cal.3d at pp. 293-294,' fn. 4, 124 Cal.Rptr. 204, 540 P.2d 44.)
Thus, Murgia broadly stands for the proposition that a defendant may bring a pretrial motion to dismiss a criminal proceeding based on constitutional grounds. The case, however, does not support defendant's claim here that a constitutionally grounded motion may be brought eight years after judgment.
Fosselman is similar to Murgia. There, the Supreme Court held that criminal defendants may raise claims of ineffective assistance of counsel in a new trial motion. (Fosselman, supra, 33 Cal.3d at pp. 582-583, 189 Cal.Rptr. 855, 659 P.2d 1144.) The court stated: "It is true [section 1181] expressly limits the grant of a new trial to only the listed grounds, and ineffective assistance is not among them. Nevertheless, the statute should not be read to limit the constitutional duty of trial courts to ensure that defendants be accorded due process of law." (Id. at p. 582, 189 Cal.Rptr. 855, 659 P.2d 1144.) The court noted: "It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them. [Citation.] Thus, in appropriate circumstances justice will be expedited by avoiding appellate review, or habeas corpus proceedings, in favor of presenting the issue of counsel's effectiveness to the trial court as the basis of a motion for new trial." (Ibid.)
Thus, Fosselman stands for the proposition that a defendant may bring a statutory motion for a new trial based on constitutional grounds not specified in the new trial statute. Here, however, the posture is quite different. Fosselman simply does not support defendant's claim that a nonstatutory postjudgment motion to vacate may be brought eight years after judgment simply because the motion is constitutionally grounded.
We fail to perceive any constitutional necessity in the present circumstances for crafting a new nonstatutory motion to vacate judgment based on ineffective assistance of counsel. First, recognizing such a remedy would necessarily extend the time for appealing from a judgment indefinitely. There would be no judgment finality.[13] *269 And second, defendant was in actual or constructive state custody for five years after judgment. The INS provided him with notice of the deportation consequences of his conviction one year into this custody. Thus, defendant had the habeas corpus remedy available for four years. Though it is true that the INS did not charge defendant with moral-turpitude convictions until after defendant's state custody ended, the initial INS notification, charging aggravated felonies, informed that defendant's petty theft plea and conviction had specific deportation consequences. In other words, defendant knew while he was in state custody that his trial counsel had failed to properly advise him about the deportation consequences of his plea. That the INS changed its deportation theory after defendant's state custody ended does not affect this fact.[14]
Defendant asks that we construe his motion as a statutory motion to vacate brought on nonstatutory but constitutional grounds, a motion similar to the one at issue in Fosselman. He urges that Penal Code section 1016.5 provides the statutory authority. We disagree.
As mentioned, Penal Code section 1016.5 requires that, before accepting a plea of guilty or nolo contendere, a court must advise the defendant that, if he or she is not a citizen, conviction of the charged offense might result in deportation. (Ante, fn. 9.) The remedy for failure to give that advice is to allow withdrawal of the plea on defendant's motion upon a showing that the conviction might result in deportation. (Pen.Code, § 1016.5, subd. (b).)
Thus, Penal Code section 1016.5 places a specific but limited duty on the trial court to warn a defendant that, if he or she is not a citizen of the United States, a conviction may have serious immigration consequences. The section's remedy provides that, if the trial court fails to provide that warning, the guilty plea may be withdrawn.
*270 Here, it is undisputed that the trial court properly advised defendant in the terms of Penal Code section 1016.5. Defendant's claim that counsel failed to advise him of the specific deportation consequences is a distinct claim that arises from principles embodied in the federal and state Constitutions, not from section 1016.5. Section 1016.5 therefore creates no procedural mechanism for asserting that counsel provided ineffective assistance of counsel in advising a defendant on the immigration consequences of entering a plea. (People v. Gallardo, supra, 77 Cal.App.4th 971, 976, 988-989, & fn. 9, 92 Cal.Rptr.2d 161 [when there is no claim the defendant did not receive the section 1016.5 warning, or that he failed to understand them, "the only arrow in [the defendant's quiver below was ineffective counsel and his only remedy was habeas corpus"].) Stated another way, defendant asks us to rewrite a duty-imposing statute to impose a duty upon one whom the statute does not impose the duty. This posture is different from Fosselman, which addressed a statute allowing a new trial for specified trial irregularities and essentially recognized that constitutional trial irregularities were implicit in specified trial irregularities.
Defendant urges that Penal Code section 1016.5 implicitly allows him to challenge counsel's dereliction. He cites Carty and Totari for the proposition that a motion under section 1016.5 to withdraw a plea may raise issues concerning not only the trial court's failure to provide the required warning but other defects related to the impact of immigration law, including ineffective assistance of counsel. Carty, however, deals with the issue of whether the failure of a trial court to advise pursuant to section 1016.5 can be raised by a petition for writ of error coram nobis or must be raised by a motion to vacate under subdivision (b) of section 1016.5. The case does not hold or suggest that a section 1016.5 motion to vacate can raise issues concerning ineffective assistance of counsel. (See Carty, supra, 110 Cal. App.4th at pp. 1521, 1524-1530, 2 Cal. Rptr.3d 851.) And Totari deals with the issue of whether a defendant may appeal from a denial of a section 1016.5 motion to vacate. The case does not hold or suggest that a section 1016.5 motion to vacate can raise issues concerning ineffective assistance of counsel. (See Totari, supra, 28 Cal.4th at p. 879, 123 Cal.Rptr.2d 76, 50 P.3d 781.)
We are constrained to briefly comment on the merits of defendant's ineffective assistance of counsel claim.
To establish ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and that the deficient performance was prejudicial, i.e., that a reasonable probability exists that but for counsel's failings, the result would have been more favorable to the defense. (In re Resendiz (2001) 25 Cal.4th 230, 239, 105 Cal.Rptr.2d 431,19 P.3d 1171.)
While the California Supreme Court has held that affirmative misadvice regarding immigration consequences can in certain circumstances constitute ineffective assistance of counsel, it has not determined that a "mere failure to advise also constitute] ineffective assistance." (In re Resendiz, supra, 25 Cal.4th at p. 240, 105 Cal.Rptr.2d 431, 19 P.3d 1171.) The, court has stated: "We are not persuaded that the Sixth Amendment imposes a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law. In any event, petitioner in this case does not allege a mere failure to investigate, so the question is not squarely *271 presented." (Id, at pp. 249-250, 105 Cal. Rptr.2d 431,19 P.3d 1171.)
We need not map out all the complexities of immigration law and decide whether a criminal attorney must advise his or her client defendant regarding the certainty of immigration consequences resulting from a plea. Suffice it to say, regardless whether trial counsel's representation fell below an objective standard of reasonableness, defendant did not show prejudice.
"[A] defendant who ple[aded] guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he would not have ple[aded] guilty, and would have insisted, instead, on proceeding to trial." (In re Resendiz, supra, 25 Cal.4th at p. 253, 105 Cal.Rptr.2d 431, 19 P.3d 1171.) A defendant's assertion that he would not have pleaded guilty if given competent advice must be corroborated independently by objective evidence. (Ibid.)
Here, however, defendant's claim is not that he would have insisted on proceeding to trial but that trial counsel should have pursued a plea bargain that would not have resulted in immigration consequences. But, in this context, defendant was required to present "substantial evidence suggesting [that] the prosecutor might ultimately have agreed to a plea that would have allowed [him] to avoid adverse immigration consequences." (In re Resendiz, supra, 25 Cal.4th at pp. 253-254, 105 Cal.Rptr.2d 431, 19 P.3d 1171.) The objective, undisputed facts of this case establish the contrary.
Trial counsel's declaration states that counsel could have negotiated a better deal with the prosecutor had he known of the immigration consequences of the petty theft plea. Defendant's reasoning is that a plea to non-moral-turpitude commercial burglary offered the prosecutor a conviction with the same maximum sentence as petty theft. Defendant's point is that any prosecutor would likely be indifferent to whether defendant's plea was to petty theft or non-moral-turpitude commercial burglary.
Defendant's point is convincing but immaterial. The pivotal point is that defendant received three years for the petty-theft conviction and two years for the residential-burglary conviction. There is nothing in the record to suggest that defendant would have received anything less (let alone less than one year) had he pleaded to non-moral-turpitude commercial burglary.[15] Thus, defendant would have suffered aggravated-felony convictions for immigration law purposes (sentence of one year or more) even if he had pleaded to non-moral-turpitude commercial burglary.[16] The present debate, which *272 assumes that trial counsel could have negotiated a plea to non-moral-turpitude commercial burglary, overlooks the reality that a plea to non-moral-turpitude commercial burglary would ultimately have resulted in a three-year, two-concurrent-year sentence, which, in turn, would have converted the convictions into aggravated felonies and triggered mandatory deportation. The present debate is possible only because the trial court took the aggravated felonies out of play by vacating the three-year, two-year sentences after defendant had served them. This is something that the trial court would not have done had defendant pleaded to non-moral-turpitude commercial burglary because defendant would have been without arguable grounds (ineffective assistance of counsel) to seek a sentence vacation. As it stands, defendant has benefited from the trial court's erroneous sentence vacation (ante, fn. 7) to the extent that the vacation converted defendant's mandatory deportation fate into a discretionary deportation risk. Had trial counsel performed as defendant asserts counsel should have, defendant's deportation would be a fait accompli.
In short, the uncontested facts demonstrate that defendant had no reasonable chance of plea bargaining to an offense that would not meet the criteria for deportability. We must therefore conclude that any failure of trial counsel to advise defendant of the immigration consequences of his plea was nonprejudicial. Accordingly, defendant cannot establish ineffective assistance of counsel.
Although defendant's plight evokes sympathy and arguably demonstrates the harshness of federal immigration policy, these matters do not render his circumstances unjust. Reasonable minds may differ regarding the wisdom and fairness of deporting defendant, but the inescapable fact is that he jeopardized his ability to continue to reside in the United States by committing multiple felonies. His plight is no different from any other immigrant who is convicted of a felony that renders him or her subject to deportation. Unless deportation for commission of qualifying felonies is deemed an injustice for all, defendant's case is neither unjust nor uniquely deserving of extraordinary intervention by California courts. It would not be a proper application of equitable principles for this court to attempt to thwart the application of the nation's immigration laws to defendant, who was warned under Penal Code section 1016.5 of immigration consequences and freely accepted the risk that he would be deported.

DISPOSITION
The order granting coram nobis relief is reversed. The trial court is directed to enter an order denying defendant's petition. The order vacating conviction is reversed. The trial court is directed to enter an order denying defendant's nonstatutory motion to vacate judgment.
WE CONCUR: RUSHING, P.J., and ELI A, J.
NOTES
[1] Thereafter in 1996, while attending the University of California at Santa Barbara, defendant burglarized the campus book store and suffered misdemeanor convictions for petty theft and burglary. In 2004, the, Santa Barbara County Superior Court vacated these convictions and dismissed the case. The order followed a grant of defendant's motion to vacate that was made on the ground that the convictions were void because they were in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The record does not reveal any underlying facts. Defendant provided us with an order and amended order that only recite the superior court's conclusion.
[2] The INS is now known as the Department of Homeland Security. The name change occurred at some point during these proceedings. We will use INS throughout for clarity.
[3] The Immigration and Nationality Act (8 U.S.C.A. § 1229a) provides that "Any alien who is convicted of an aggravated felony at any time after admission is deportable." (8 U.S.C.A. § 1227(a)(2)(A)(iii).) And the act defines aggravated felony to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." (8 U.S.C.A. § 1101(a)(43)(G).)
[4] The INS held defendant without bond. Via petition for writ of habeas corpus filed in United States District Court, defendant successfully challenged the constitutionality of INS detention without bond. The United States Court of Appeals affirmed. But the United States Supreme Court reversed in Demore v. Kim (2003) 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724. Defendant supposes that the government's determination to deport him for what he deems relatively minor offenses is a vendetta stemming from his determination to fight the INS all the way to the Supreme Court.
[5] The Immigration and Nationality Act provides that "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefore and regardless of whether the convictions were in a single trial, is deportable." (8 U.S.C.A. § 1227(a)(2)(A)(ii).) The act does not define moral turpitude. The term defies a precise definition but the accepted definition seems to include an honesty component that would encompass conduct that is contrary to justice, honesty, or morality. (Smriko v. Ashcroft (3rd Cir.2004) 387 F.3d 279, 283.) Defendant concedes that burglary and theft offenses qualify as crimes involving moral turpitude.
[6] At the hearing, the trial court inquired of the prosecutor whether he "want[ed] to get into this?" To this the prosecutor replied: "No. I just want to say we're not opposing it. That's as far into it as I want to get."
[7] Trial courts do not have unlimited authority to modify a sentence once imposed. The common law rule is that, once a defendant begins serving a sentence, the sentencing court loses jurisdiction to modify the sentence it imposed. (See People v. Karaman (1992) 4 Cal.4th 335, 344, 347, 350, 14 Cal.Rptr.2d 801, 842 P.2d 100; People v. Howard (1997) 16 Cal.4th 1081, 1089, 68 Cal.Rptr.2d 870, 946 P.2d 828.) It is true that, apart from statute, courts have inherent authority to correct clerical errors in a sentence at any time. " It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. [Citations.] The power exists independently of statute and may be exercised in criminal as well as in civil cases. [Citation.] The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. [Citation.] The court may correct such errors on its own motion or upon the application of the parties.'" (In re Candelario (1970) 3 Cal.3d 702, 705, 91 Cal.Rptr. 497, 477 P.2d 729.) This nunc pro tunc authority, however, is limited to true clerical errors. Here, defendant did not seek to correct a clerical error but sought instead to "`"declare that something was done which was not done."'" People v. Borja (2002) 95 Cal.App.4th 481, 485, 115 Cal.Rptr.2d 728.) "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, ... unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (In re Candelario, supra, 3 Cal.3d at p. 705, 91 Cal.Rptr. 497, 477 P.2d 729.) "The distinction between clerical error and judicial error is `whether the error was made in rendering the judgment, or in recording the judgment rendered.'" (Ibid.) An example of judicial error is found in People v. Borja, supra, 95 Cal. App.4th 481, 115 Cal.Rptr.2d 728. There, the defendant had been initially granted probation conditioned in part on a jail sentence of 365 days. Almost six years later, after the defendant had completed his probation, the defendant sought and obtained a nunc pro tunc modification of the probation condition to a sentence of 364 days. This change was important to avoid the defendant's deportation for an aggravated felony under federal immigration laws. (Id. at pp. 483-484, 115 Cal.Rptr.2d 728.) The appellate court found the change invalid, stating that "[t]his case does not involve a clerical order." (Id. at p. 485, 115 Cal.Rptr.2d 728.) The defendant was seeking a retroactive change in the sentence "that had been intended, imposed and served." (Ibid.) The trial court's vacation of defendant's sentences was therefore improper.
[8] Defendant's supposition that the government has a vendetta against him is rooted in the immigration judge's decision that questions why "the whole [INS] brass turned out for this hearing" and poses that "Perhaps it is because [defendant] had the nerve to challenge the conditions of his detention and to take his case all the way up to the Supreme Court.... In the rarified world of immigration law practice [defendant] is somewhat of a celebrity."
[9] Defendant styled his petition as a motion to vacate judgment (coram nobis).
[10] The information's commercial-burglary count charged defendant with entering "with the intent to commit larceny and any FELNY." In his petition and motion, defendant urged the trial court to allow vacation of the judgment, withdrawal of his plea, and entry of a guilty plea to commercial burglary charging "entry with intent to commit `theft or any felony' ..." Apparently, defendant accepted that a conviction for commercial burglary with intent to commit theft "and" any felony would still trigger discretionary deportation but a conviction for commercial burglary with intent to commit theft "or" any felony would not trigger discretionary deportation. (Cf. United States v. Rivera-Sanchez (9th Cir.2001) 247 F.3d 905 [guilty plea under statute that describes conduct constituting aggravated felony or conduct not constituting aggravated felony is not plea to aggravated felony]; see also Malta-Espinoza v. Gonzales (2007) 478 F.3d 1080 (9th Cir.2007) [same though plea was to complaint charging conduct constituting aggravated felony and conduct not constituting aggravated felony].) As to this, the People argued: "If the court grants the motion to vacate the plea [sic], the plea bargain is essentially set aside and the defendant would be facing all charges and special allegations reflected in the information.... The court does not have the authority to vacate the plea and then assume the position of the prosecutor and plea bargain the charges in a manner satisfactory to the defense. The defense cites no legal authority to support such a request, primarily because none exists. The court is obviously limited by the separation of powers, and is not in a position to plea bargain criminal charges with a defendant."
[11] The waiver form's admonition complied with the legal requirements of Penal Code section 1016.5, which in subdivision (a) provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (See, e.g., People v. Quesada (1991) 230 Cal.App.3d 525, 536, 281 Cal.Rptr. 426 [plea form is sufficient Penal Code section 1016.5 advisement]; People v. Ramirez (1999) 71 Cal.App.4th 519, 522, 83 Cal.Rptr.2d 882 [same].)
[12] Defendant concedes that habeas corpus was not available to him at the time he filed his petition and motion. Where a criminal defendant is not in prison or on probation or parole or otherwise in constructive custody, the remedy of habeas corpus is not available to him or her and it is immaterial that lingering noncustodial collateral consequences are still attached to the defendant's conviction. (Mendez v. Superior Court (2001) 87 Cal.App.4th 791, 796, 104 Cal.Rptr.2d 839.) A deportation proceeding is a `collateral consequence'" of a criminal conviction. Pendency of deportation proceedings, without more, does not constitute "custody" in California for purposes of satisfying the jurisdictional requirements of state habeas corpus law. (In re Azurin (2001) 87 Cal.App.4th 20, 26, 104 Cal.Rptr.2d 284 (Azurin).) Belatedly, at oral argument, defendant cited People v. Villa (2007) 148 Cal.App.4th 473, 56 Cal. Rptr.3d 56, as disagreeing with the proposition that a person in the custody of immigration officials solely on account of a California conviction is not in state constructive custody and thus has no state habeas corpus remedy. In Villa, the court affirmed a judgment denying a coram nobis petition that claimed ineffective assistance of counsel for giving incorrect advice regarding the immigration consequences of a guilty plea. In so doing, two justices addressed the appellant's contention that coram nobis was available when habeas corpus was unavailable by essentially reasoning that habeas corpus was available because coram nobis was unavailable. They then treated the appellant's underlying petition as a habeas corpus petition and denied the petition on the merits. Thus, the majority's opinion on the habeas corpus issue addressed what defendant did not raise. It was therefore unnecessary to the decision and therefore dictum. Appellate courts do not establish precedent by implication. Appellate decisions are not authority for propositions not expressly considered. (Alameida v. State Personnel Bd. (2004) 120 Cal.App.4th 46, 58, 15 Cal.Rptr.3d 383.) Even if the appellate court makes observations on a point, the observations are dicta and not precedent unless they were necessary to the decision. (Krupnick v. Hartford Accident & Indemnity Co. (1994) 28 Cal. App.4th 185, 199, 34 Cal.Rptr.2d 39.) In short, decisions are authority for points "`actually involved and actually decided,'" and not otherwise. (Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal.Rptr.2d 830, 951 P.2d 399.) In any event, we agree with the concurring justice in Villa who wrote separately "to express [his] strong disagreement with the dicta in the majority opinion suggesting a California court has jurisdiction to consider a habeas corpus petition challenging a conviction when the sentence imposed for that conviction has fully expired." (People v. Villa, supra, 148 Cal. App.4th at 484, 56 Cal.Rptr.3d at 65 (cone, opn. of McGuiness, P.J.).)
[13] "`[A]n order is not appealable unless declared to be so by the Constitution or by statute. [Citations.]' [Citation.] Stated simply, a criminal appeal by the defendant may be taken only front `a final judgment of conviction' ([Pen.Code,] §§ 1237, subd. (a), 1466, subd. (2)(A)) or from `any order made after judgment, affecting the substantial rights' of the party ([Pen.Code,] §§ 1237, subd. (b), 1466, subd. (2)(B))." (People v. Gallardo, supra, 77 Cal.App.4th 971, 980, 92 Cal.Rptr.2d 161.) "If interpreted broadly, the [last] phrase would apply to any postjudgment attack upon the conviction or sentence. Postjudgment trial level attacks seeking to nullify convictions and/or sentences come in many forms. They may be called, for example, motions to vacate, motions to correct, or motions to set aside judgments, petitions for writ of habeas corpus, or petitions for writ of error coram nobis. The court's denial of relief in any such situation could affect the defendant's substantial rights. However, decisional authority has limited the scope of the phrase, defining appealability more narrowly." (Ibid.) As explained by People v. Gallardo, supra, 77 Cal.App.4th at pages 980-981, 92 Cal.Rptr.2d 161, "A ruling denying a motion to vacate judgment would qualify semantically as an order after judgment affecting substantial rights, but such an order ordinarily is not appealable when the appeal would merely bypass or duplicate appeal from the judgment itself. [Citation.] `In such a situation appeal from the judgment is an adequate remedy; allowance of an appeal from the order denying the motion to vacate would virtually give defendant two appeals from the same ruling and, since there is no time limited [sic] within which the motion may be made, would in effect indefinitely extend the time for appeal from the judgment.'" (Fn.omitted.)
[14] The parties debate whether substantial evidence supports the trial court's implicit finding that defendant carried his burden to establish that he sought relief below with due diligence. (See e.g., People v. Totari (2003) 111 Cal.App.4th 1202, 1207, 4 Cal.Rptr.3d 613"[motion to vacate judgment pursuant to Penal Code section 1016.5]; In re Clark (1993) 5 Cal.4th 750, 785, fn. 21, 21 Cal. Rptr.2d 509, 855 P.2d 729 [habeas corpus petition]; People v. Shipman, supra, 62 Cal.2d 226, 230, 42 Cal.Rptr. 1, 397 P.2d 993 [coram nobis ].) "The reason for requiring due diligence is obvious. Substantial prejudice to the People may result if the case must proceed to trial after a long delay." (People v. Castaneda (1995) 37 Cal.App.4th 1612, 1618, 44 Cal. Rptr.2d 666.) "Delay in seeking habeas corpus or other collateral relief has been measured from the time a petitioner becomes aware of the grounds on which he seeks relief. That time may be as early as the date of conviction." (In re Clark, supra, 5 Cal.4th at p. 765, fn. 5, 21 Cal.Rptr.2d 509, 855 P.2d 729; see, e.g., In re Watkins (1966) 64 Cal.2d 866, 870-872, 51 Cal.Rptr. 917, 415 P.2d 805 [three-year delay precluded coram nobis relief].) We need not analyze the point and the evidence supporting the trial count's finding since we are not relying on the diligence prong to reverse the trial court's orders. We are simply observing that defendant necessarily became aware of the grounds on which he seeks relief (ineffective assistance of counsel in failing to advise of specific immigration plea consequences) when the INS first asserted that defendant's conviction subjected him to deportation, which was one year into defendant's five-year state custody. Under such circumstances, we are not inclined to create a new nonstatutory motion.
[15] Defendant was ineligible for probation in the petty theft case until the trial court dismissed the strike admission. But defendant's record was that he burglarized the residence while on juvenile probation, burglarized the bookstore while on felony probation, and burglarized the Costco while on felony probation. Absent a declaration from Judge Curtis to the effect that he would have placed defendant on probation in this case and in the residential burglary case (or ordered some other lessthan-one-year disposition in each case) had he known that a sentence of one year or more would have immigration consequences, the trial court's opinion that Judge Curtis's remarks demonstrated some sympathy and optimism for defendant amounts to speculation rather than substantial evidence that defendant could have pleaded to a non-aggravated felony had he received effective assistance of counsel.
[16] The People do not discuss this truism though they briefly touched on the point below. Defendant claims in passing that pleading to commercial burglary, entry to commit theft or any felony, would not have been considered an aggravated felony. He cites United States v. Parker (9th Cir.1993) 5 F.3d 1322, 1325, for this proposition without discussion. But Parker has nothing to do with immigration law, let alone the definition of aggravated felonies for immigration law purposes. The case holds the following: "We conclude that, in determining whether a prior conviction following a jury trial was a `violent felony' for purposes of the armed career criminal provision, 18 U.S.C. § 924(e), the sentencing court may not resort to the charging instrument alone. Nor may it resort solely to the charging paper and verdict form where the form fails to reflect that the requisite facts were found by the jury." (Id. at p. 1323.)